Jeanine **GOODSTEIN** and Linda McCauley, Plaintiffs,

v.

**BOMBARDIER CAPITAL, INC.,** Pierre **Lortie, Thomas Murphy, Richard Odom and Michael Felber, Defendants.**

No. 2:94–CV–110.

United States District Court, D. Vermont.

Jan. 27, 1995.

---

Christina M. Pingert, Carter & Pingert, South Hero, VT, for plaintiffs.

Patricia M. Sabalis, Downs, Rachlin & Martin, Burlington, VT, for defendants.

## OPINION AND ORDER

PARKER, Circuit Judge, Sitting By Designation.

■ Plaintiffs, Jeanine Goodstein ("Goodstein") and Linda McCauley ("McCauley"), filed their original Complaint in state court on March 11, 1994. The original Complaint contained three counts alleging gender discrimination, sexual harassment, and intentional infliction of emotional distress by Defendants Bombardier Capital, Inc. ("BCI"), and three individual defendants. Plaintiffs' first amended Complaint, filed in state court on March 24, 1994, added a fourth individual defendant. All five defendants ("Defendants") removed to this Court on April 13, 1994. That same day, Defendants filed a partial Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6). On May 16, 1994, Goodstein and McCauley filed a Motion to Amend their Complaint a second time. The Motion to Amend is unopposed by Defendants and is hereby GRANTED. Therefore, the allegations contained within the second amended Complaint are considered the relevant allegations for the purposes of this Opinion.

Count I alleges conduct constituting sexual harassment against all Defendants with regard to Goodstein. Count II alleges sexual harassment and gender discrimination against all Defendants with regard to McCauley. Count III alleges that Defendants' conduct was so outrageous and so extreme in degree as to constitute intentional infliction of emotional distress with regard to both Goodstein and McCauley. Count III also appears to contain additional allegations of gender discrimination with regard to both Goodstein and McCauley. Defendants partial Motion to Dismiss is now before the Court.

■ The standard for dismissal of a claim pursuant to Fed.R.Civ.P. 12(b)(6) requires that it be apparent that the plaintiff is unable to prove any set of facts which would entitle her to relief. See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In making this determination, the Court must accept the plaintiff's allegations as true and view them in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Applying these standards to this case, the allegations relevant to the pending motion are as follows.

## FACTS

Goodstein was a National Accounts Specialist for BCI from February, 1988 until her termination in October, 1991. McCauley was a Regional Sales Manager for BCI from March, 1989 until her termination in October, 1991. The four individual defendants all held positions of authority within BCI during the times of the alleged conduct. Pierre Lortie ("Lortie") was president of BCI. Thomas Murphy ("Murphy") and Richard Odom ("Odom") were both vice-presidents of BCI. Michael Felber ("Felber") was Director of Human Resources responsible for personnel matters at BCI.

In May, 1991, Murphy and Goodstein rode together in the back of a limousine. Goodstein alleges that, unsolicited, Murphy began to massage her feet and proceeded to move his hands up her leg. Goodstein claims that she feared more sexual aggression might ensue. The episode ended, however, when the limousine arrived at their destination and Goodstein was able to exit.

Goodstein alleges that on several occasions Odom suggested that her career would be enhanced if she submitted to intimate sexual relations with him.

Goodstein further describes several episodes where other Bombardier employees, subject to the supervision and authority of the named defendants, made degrading and harassing comments to the effect that Goodstein "needed a good lay" and that she "wouldn't be such a bitch or so aggressive, if she had a good lay." On another occasion, allegedly upon Goodstein's first meeting with Lortie, a Bombardier employee introduced Goodstein as "an aggressive bitch with great tits."

Goodstein alleges that despite her complaints regarding these episodes, none of the Defendants took any steps to investigate or act to terminate these types of behavior. Goodstein claims that as a consequence of a hostile working environment and specific instances of harassment, she has suffered emotional distress requiring counseling and medical treatment.

McCauley alleges similar episodes of specific conduct, including one instance where, in a public hallway of an airport, Odom yelled to her that she looked "better than a hundred dollar hooker." McCauley claims that this type of behavior and similar inaction by the Defendants resulted in emotional distress requiring medical attention.

Goodstein and McCauley were both terminated in early October, 1991. They allege that male salespeople who were also terminated at that time were subsequently rehired in December, 1991.

## DISCUSSION

Defendants' partial Motion to Dismiss contains four arguments. First, Defendants argue that the Court should dismiss all Title VII claims against the individual defendants because they do not meet the statutory definition of "employer" and are therefore not subject to suit under Title VII as a matter of law.

Second, Defendants argue that all claims against Felber should be dismissed under Rule 8(a)(2) and the jurisdictional requirement that all defendants be named in the administrative charge filed with the Equal Employment Opportunity Commission.

Third, Defendants argue that Goodstein and McCauley's claim of Intentional Infliction of Emotional Distress is barred by Vermont's Worker's Compensation Act.

Finally, Defendants move to have Goodstein and McCauley's prayer for punitive damages under Title VII dismissed because punitive damages are not available under Title VII for conduct which occurred prior to enactment of the Civil Rights Act of 1991.

### Personal Liability Under Title VII:

This Court is once again asked to rule as to whether individual defendants, acting as agents of an employer, may be personally liable for Title VII violations. In two prior unpublished opinions this Court has ruled that they may. *See, Perry v. Ethan Allen,* Civ. 2:94–24 (D.Vt. September 23, 1994); *Hansen v. Holstein–Friesian Assoc.,* Civ. 2:92–154 (D.Vt. March 3, 1994). However, both prior opinions based their reasoning, in part, on an erroneous citation to this Court's

earlier holding in *McHugh v. University of Vermont,* 758 F.Supp. 945 (D.Vt.1991).

■ In addition, recent case law in other circuits is contrary to this Court's position taken in *Perry* and *Hansen.* Neither the Second Circuit nor the United States Supreme Court have directly ruled on this particular issue.[1] However, looking to other circuits, the Fifth Circuit has joined the Ninth Circuit in barring personal liability under Title VII. *See Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994); *Miller v. Maxwell's Int'l,* 991 F.2d 583 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (February 22, 1994). For these reasons it is appropriate to give the issue of personal liability under Title VII more comprehensive consideration.

The two opposing views regarding an agent's personal liability in this context arise from different interpretations of the statutory language of Title VII. Title VII forbids sexual harassment and discrimination by employers. The issue before the Court concerns the precise meaning of the term "employer" in Title VII. The statutory definition states

> [t]he term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person. 42 U.S.C. § 2000e(b).

The entire legal dispute hinges upon the proper interpretation of the "agent" clause in this definition.

One view, urged here by Defendants, interprets the agent language as an "unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.1994). The Ninth Circuit claims that this expression of respondeat superior liability forecloses the possibility that an agent can be held personally liable because an agent cannot be an employer. *Miller,* 991 F.2d, at 587–588 (9th Cir.1993). Defendants in this case rely particularly on *Miller* for the substance of their legal argument against personal liability for agents.[2]

Other circuits have recognized that agents may be held personally liable under Title VII. *See, e.g., Paroline v. Unisys Corp.,* 879 F.2d 100 (4th Cir.1989), *aff'd in pertinent part,* 900 F.2d 27 (4th Cir.1990) (en banc); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d at 510, n. 1 (4th Cir.1994); *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178 (6th Cir.1992); *Romain v. Kurek,* 772 F.2d 281 (6th Cir.1985); *Tafoya v. Adams,* 612 F.Supp. 1097 (D.Colo.1985), *aff'd,* 816 F.2d 555 (10th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); *Owens v. Rush,* 636 F.2d 283, 286 (10th Cir.1980).

The argument supporting personal liability for agents gives the agent language a literal reading, interpreting it to mean that agents are statutory "employers" and may be held personally liable for Title VII violations as though they were themselves the actual employers. Under this view, the statutory definition of "employer" creates a term of art for the purposes of Title VII, holding both actual

---

**1.** The Second Circuit has reviewed cases which have held employers' agents personally liable under Title VII, but in none of these cases has the court commented as to the issue of personal liability itself. *See Zaken v. Boerer,* 964 F.2d 1319 (2d Cir.1992) (appeal, on evidentiary grounds, from Title VII suit against chief executive officer in her individual capacity). *See also Carrero v. New York City Housing Authority,* 668 F.Supp. 196 (S.D.N.Y.1987), *aff'd in part, rev'd in part on other grounds,* 890 F.2d 569 (2d Cir.1989) (in combined Title VII and § 1983 claim, district court entered judgment against supervisor in his individual capacity for sexual harassment under Title VII). This Court will not infer any meaning from the Second Circuit's silence. *See, also, Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172

(S.D.N.Y.1992) (holding supervisor personally liable consistent with Second Circuit law), *vacated on other grounds, Bridges v. Eastman Kodak Co.,* 1994 WL 33797 (S.D.N.Y. Jan. 3, 1994); *Linville v. O & K Trojan, Inc.,* 1994 WL 117363 (W.D.N.Y. March 31, 1994) (holding supervisor personally liable and citing *Bridges* assessment of Second Circuit law with approval).

**2.** The *Miller* ruling is only one of several rulings offered by the defendants holding that there can be no personal liability for agents under Title VII. *See, also, Berry v. North Alabama Electric Coop.,* 61 U.S.L.W. 2763, 1993 WL 185205 (N.D.Ala.1993); *Johnson v. Northern Indiana Public Service Co.,* 844 F.Supp. 466 (N.D.Ind. 1994).

employers and their agents liable for Title VII violations where they "exercise[ ] significant control over the plaintiff's hiring, firing, or conditions of employment." *Paroline,* 879 F.2d at 104.

In a statutory construction case the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). The statute in this case states that employers shall not engage in sexual harassment or discrimination. Employer "means a person ... who has fifteen or more employees ... and any agent of such a person."

Because the statute speaks with such clarity there is no need to look beyond the statutory language in an attempt to divine Congressional intent. For that reason this Court is unpersuaded by the *Miller* case or the other cases which seem to proceed from a premise of ambiguity in the statute which simply does not exist. There being no extraordinary circumstances to justify such judicial inquiry; it should not proceed. I hold that the statute means what it says. Both employers of 15 or more persons and their agents may be held liable for Title VII violations.

While *Miller* does not persuade this Court that individual liability is necessarily barred under Title VII, *Miller* identifies a troubling incongruity in Title VII's liability scheme; that is, the fact that an agent's monetary liability for Title VII violations is determined by the overall number of employees. However, this is a matter for legislative, not judicial, concern.

For the reasons stated above, the partial Motion to Dismiss Plaintiffs' Title VII claims against the individual defendants is DENIED.

### Motion to Dismiss all Claims Against Felber:

Goodstein and McCauley filed their original Complaint on March 11, 1994. This Complaint failed to name Defendant Felber in the heading. Moreover, although it named Felber in the body of the Complaint, it failed to allege any specific conduct by Felber which might give rise to a claim against him. Goodstein and McCauley filed an amended Complaint as of right on March 24, 1994 which added Felber to the heading. Plaintiffs' second amended Complaint incorporates specific allegations against Felber. These allegations raise the inference that, as Director of Human Resources for BCI, Felber was responsible for personnel matters, including employee complaints regarding Title VII violations. Plaintiffs specifically charge that Felber failed to investigate or act to terminate discriminatory and harassing behavior despite numerous complaints from the Plaintiffs.

Defendants' partial Motion to Dismiss argues that all claims against Felber should be dismissed pursuant to Fed.R.Civ.P. 8(a)(2). This rule requires plaintiffs to clearly articulate their claims and the basis for relief upon those claims. In this way all parties to the dispute are put on notice of a claim pending against them. In light of today's order granting Plaintiffs' Motion to Amend their Complaint a second time, Plaintiffs have both named Felber and made specific allegations against Felber in their Complaint. For this reason, Defendants' partial Motion to Dismiss all claims against Felber pursuant to Fed.R.Civ.P. 8(a)(2) is DENIED.

Defendants further argue that Goodstein and McCauley failed to meet the Title VII jurisdictional requirement that all respondents must be named in the administrative charge filed with the EEOC prior to filing suit. Defendants cite several cases both within the Second Circuit and beyond to support the proposition that failure to name Felber in the administrative charge is sufficient grounds to dismiss all claims against him. The controlling case for this Court is *Johnson v. Palma,* 931 F.2d 203 (2d Cir. 1991).

In *Johnson,* the Second Circuit reviewed the policy rationale underlying, and exceptions to, the general rule that the plaintiff must name all defendants in the EEOC or state administrative filing which is a pre-

requisite for a Title VII suit. *Johnson* outlines the "identity of interest" exception to a strict application of this administrative prerequisite. Under the "identity of interest" exception a Title VII action may proceed against an unnamed party, such as Felber in this instance, "where there is a clear identity of interest between the unnamed party and the party named in the administrative charge." *Johnson*, 931 F.2d at 209. *Johnson* offers four factors, any one of which, might justify an "identity of interest" exception to dismissal.

The four factors are 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson*, 931 F.2d at 210 (citing *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)).

Plaintiffs meet at least two of these factors. The nature of the claim, asserting repeated failures on the part of BCI to respond to Plaintiffs complaints, and the nature of Felber's responsibility for personnel matters at BCI, suggest that Felber would have been consulted by BCI regarding the administrative charge, and would have likely participated in any administrative procedures seeking voluntary conciliation or compliance with Title VII. Although, in this instance there is no claim that the EEOC or any state agency undertook any formal investigation of the underlying allegations, Felber's apparent responsibility for employment matters at

BCI suggest that he would have known of any pending administrative proceedings, had they occurred, from the outset. Felber also fails to specify how he has been actually prejudiced by the failure to name him in the administrative charge. Furthermore, Felber fails to suggest how he has been prejudiced by the Plaintiffs' failure to allege specific conduct on his part prior to this time. For these reasons, the partial Motion to Dismiss all claims against Felber is DENIED.

### Intentional Infliction of Emotional Distress and Vermont's Worker's Compensation Act:

Defendants argue that Plaintiffs' claim of intentional infliction of emotional distress ("IIED") is barred, as a matter of law, by Vermont's Worker's Compensation Act ("WCA"). Defendants assert that the WCA provides the exclusive remedy for an IIED claim under 21 V.S.A. § 622.[3] Defendants cite the Vermont Supreme Court ruling in *Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439, 417 A.2d 926 (1980), as the controlling law in this matter. The Court agrees that *Kittell* is controlling, however, Defendants interpretation of its holding is overbroad.

Worker's compensation laws were originally enacted to impose strict liability upon employers for workplace accidents which injure employees arising from negligence. *Kittell* involved a workplace accident which resulted in a severe eye injury for an employee. The employee sought to pursue a common law tort claim for his injury, alleging that his employer had intentionally stripped all safety devices from the machine at which the injury occurred. The Vermont Supreme Court held that Kittell's injuries were covered by the WCA.

Defendants rely particularly on *Kittell*'s holding which states that "[n]othing short of specific intent to injure falls outside the scope of the Act." *Kittell*, 138 Vt. at 441, 417 A.2d 926. Defendants offer a second passage from the holding which states that,

**3.** § 622 states, in relevant part,

The rights and remedies granted by the [Act] to an employee on account of a personal injury for which he is entitled to compensation under the provisions of [the Act] shall exclude all other rights and remedies of such employee ... at common law or otherwise on account of such injury.

the common-law liability of the employer cannot be stretched to include *accidental injuries* caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury. [Emphasis Added.]

The quoted language merely indicates that the worker's compensation statute provides coverage for accidental injuries which occur in the workplace, even when the accident is brought about by an intentional act. I do not read *Kittell* as holding that all intentional torts which occur in the workplace setting are likewise barred as common law claims.

█ Here, Plaintiffs contend that certain officers of BCI intentionally harassed and discriminated against them. Plaintiffs allege that co-employees and supervisors made comments to them with specific reference to their individual physical attributes and behavior. Other comments concerned their physiological characteristics as women, such as menstruation, stereotyped emotional behavior due to menstruation, and the smaller size of women's bladders. Goodstein further alleges instances where supervisors specifically sought to induce her to participate in sexual acts in return for a promotion, and touched her leg in a sexually suggestive manner. The complained-of conduct was specifically aimed at Plaintiffs, both as women, and individually. *Kittell* does not bar IIED claims for the type of discriminating and harassing conduct, specifically targeted at an individual, or a clearly defined class of individuals, as is alleged in this case.

Defendants also cite this Court's ruling in *Ploof v. Brooks Drugs, Inc.,* slip op. 15–17, 1991 WL 497170 (Civ. 89–270) (D.Vt.1991) (Coffrin, J.), which dismissed an IIED claim arising from an alleged wrongful discharge. *Ploof* found, as a factual matter, that the plaintiff had not offered allegations sufficient to meet the outrageous conduct element of an IIED claim. *Ploof* then offered, as an alternative holding, that IIED claims are barred under the WCA. The alternative holding is dicta and, as such, does not have the force of law. This Court is not bound by the alternative holding in *Ploof* and today

holds to the contrary. The Vermont Worker's Compensation Act does not bar claims of intentional infliction of emotional distress as a matter of law, although, as in *Ploof,* an IIED claim may well fail on the facts. Defendants' partial Motion to Dismiss Plaintiffs' claim for intentional infliction of emotional distress is DENIED.

**Punitive Damages under Title VII:**

█ Defendants argue that Plaintiffs cannot recover Title VII punitive damages in this case due to the fact that all of the alleged conduct in violation of Title VII occurred prior to enactment of the Civil Rights Act of 1991 on November 21, 1991. Citing the recent United States Supreme Court ruling in *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (April 26, 1994), Defendants contend that punitive damages cannot be recovered for any of the alleged conduct occurring prior to November 21, 1991. *Landgraf* holds that Title VII punitive damages do not apply retroactively to cases pending on November 21, 1991. *Landgraf,* —— U.S. at ——, 114 S.Ct. at ——.

Plaintiffs allege that BCI terminated several male employees at the same time Plaintiffs were terminated in October, 1991. However, Plaintiffs further allege that BCI later rehired the males who were terminated, but failed to rehire either plaintiff at that time. Defendants would have the Court find that "[t]he fact that male employees were subsequently rehired is merely evidence that Plaintiffs may use to show that BCI's justification for their alleged unlawful conduct is a pretext," citing *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). While it is true that Plaintiffs may offer the subsequent rehiring of male ex-employees to show pretext under the *McDonnell Douglas* burden shifting analysis, Defendants improperly combine that analysis with the fact that the rehiring may also itself constitute evidence of a violation of Title VII. If, in December, 1991, BCI rehired only male ex-employees, such rehiring itself *may* prove to be discriminatory conduct in violation of Title VII. The allegations, as found in the second amended Complaint, taken in the light most favorable to the Plaintiffs, raise an

inference that BCI may have violated Title VII after November 21, 1991. At this point, the inference arising from Plaintiffs' allegations alone is sufficient to withstand the pending partial Motion to Dismiss. For this reason, Defendants' partial Motion to Dismiss Plaintiffs' claim for punitive damages under Title VII is DENIED.

For the reasons articulated above, Plaintiffs' Motion to Amend their Complaint is hereby GRANTED. Defendants' partial Motion to Dismiss is hereby DENIED.