**Johnna SHOEMAKER, Plaintiff,**

v.

**METRO INFORMATION SERVICES and Steven Lurus, Defendants,**

and

**Tamara BRANTLEY, Plaintiff,**

v.

**METRO INFORMATION SERVICES and Steven Lurus, Defendants.**

**Civ. A. Nos. 2:95cv849, 2:95cv940.**

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 8, 1996.

William Greer McCreedy, II, Gordon Bennett Tayloe, Jr., Kellam, Pickrell, Cox & Tayloe, Norfolk, VA, for plaintiffs.

Abram William VanderMeer, Jr., Timothy Walker Dorsey, Clark & Stant, P.C., Virginia Beach, VA, for Metro Information Services, Inc.

Gregory Albert Giordano, Shuttleworth, Ruloff & Giordano, Virginia Beach, VA, for Steven A. Lurus.

1. Plaintiff Shoemaker's and Plaintiff Brantley's complaints, which present virtually identical facts and name the same defendants, were consolidated in open court on December 13, 1995.

## MEMORANDUM OPINION AND ORDER
JACKSON, District Judge.

### INTRODUCTION

Defendant Steven Lurus' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) comes before the Court in response to Plaintiffs' sexual harassment claims [1] brought under Title VII, 42 U.S.C. § 2000e–2(a) (1988), and the Civil Rights Act of 1991, 42 U.S.C. § 1981a (Supp. IV 1988), and their wrongful discharge claims under common law. The complaints name Metro Information Services, Inc. ("Metro"), the company-employer, and Lurus in his individual capacity as supervisor. Lurus claims first that he is not liable because he is not an "employer" under Title VII, and second that Plaintiffs have not stated a cause of action under Virginia common law for wrongful discharge. After reviewing the pleadings and other submitted material and hearing oral argument on the issues, the Court **DENIES** Defendant Lurus's Motion to Dismiss. The Court therefore need not reach the issue of whether it will retain supplemental jurisdiction over the state law wrongful discharge claim.

### I. FACTS

Plaintiff Johnna L. Shoemaker was hired on March 4, 1993 as an Information Services Assistant at the corporate headquarters of Metro at Virginia Beach, Virginia. (Pl. Shoemaker's Comp. ¶ 12.) Plaintiff Tamara Brantley was hired June 23, 1992 as a part-time employee in the same office. (Pl. Brantley's Comp. ¶ 12.) While Defendant Steven Lurus concedes that he is a manager and supervisor at Metro, he contests Plaintiffs' implications that he managed or supervised them.[2] (Lurus Aff. ¶ 4.)

Plaintiffs make virtually identical allegations concerning Lurus' repeated acts of sexual harassment. They claim that Lurus asked both of them to join him in a hot tub in exchange for a day off, and that he an-

Citations to Plaintiffs' complaints are to both complaints unless otherwise noted.

2. *See supra* part III.A.

nounced to the office that the three were in fact going to do so, despite Plaintiffs' rejection of the invitation. (Pls.' Comp. ¶ 13.h.)

Plaintiff Brantley alleges that Lurus asked her for photographs of her vacation if she had visited a "Nudee beach", (Pl. Brantley's Comp. ¶ 13.k), and that he kept a "wheel of babes" displayed in the office that chronicled Lurus' sexual conquests. (Pl. Brantley's Comp. ¶ 13.l.) She claims that Lurus repeatedly told her to "blow me" and "do me". (Pl. Brantley's Comp. ¶ 13.g.) Finally, Brantley alleges that during an office social function in January 1994, Lurus propositioned her, asked to know her breast size and to see her breasts, continuing to do so as he pursued her to her car. (Pl. Brantley's Comp. ¶ 13.j.)

Plaintiff Shoemaker alleges that Lurus propositioned her and attempted to fondle her at the same function in January 1994. (Pl. Shoemaker's Comp. ¶ 13.k.) Before the event, Plaintiff Shoemaker claims that Lurus repeatedly requested her to reserve a hotel room so that they could have sex after the function. (Pl. Shoemaker's Comp. ¶ 13.j.) Throughout her tenure at Metro, Shoemaker claims that Lurus invited her to have sex (Pl. Shoemaker's Comp. ¶ 13.a); made offensive gestures and commented on her breast size (Pl. Shoemaker's Comp. ¶ 13.c); made other offensive comments, including references to her "sleaze factor" and "hot lingerie" (Pl. Shoemaker's Comp. ¶¶ 13.b); requested nude pictures of her to add to the collection he kept in his desk (Pl. Shoemaker's Comp. ¶ 13.d); masturbated while on the phone with her during an ostensible business call (Pl. Shoemaker's Comp. ¶ 13.f); and placed his genitals on the back of the chair next to her while she was performing software support duties, claiming he needed "support". (Pl. Shoemaker's Comp. ¶ 13.e.)

As to all of the above allegations, Plaintiffs claim that they rejected Lurus, asked him to stop his offensive behavior, and advised Metro of the harassment they were experiencing. (Pls.' Comp. ¶¶ 14, 18.) In addition, they filed a complaint with the EEOC and re-ceived right to sue letters from that organization. Plaintiffs claim that as a result of these actions, they suffered retaliation, including diminished employment responsibilities and benefits. Finally, they claim that they were constructively fired from their positions. (Pls.' Comp. ¶ 18.)

Plaintiffs assert that they have suffered emotional, psychological, and physical damage as a result of Lurus' behavior, as well as inconvenience and humiliation. (Pls.' Comp. ¶¶ 13.g, 18, 19.) They request injunctive relief, back pay with prejudgment interest, front pay, and compensatory and punitive damages pursuant to Title VII. They further request $500,000 in compensatory damages, $1,000,000 in punitive damages, pre- and post-judgment interest, costs, and attorney's fees for the common-law claim that they were wrongfully discharged.

## II. LEGAL STANDARD

■ Preliminarily, this Court must decide whether the Motion to Dismiss should be treated as one pursuant to Rule 12(b)(1) (lack of subject-matter jurisdiction) or Rule 12(b)(6) (failure to state a claim upon which relief can be granted). Lurus styles his motion as the former. (Def.'s Mem.Supp.Mot. Dismiss, at 3.) During oral argument, Defendant Lurus argued two grounds for his Motion to Dismiss: (1) supervisors are not individually liable for violations of Title VII; and (2) even if the Court holds that supervisors can be individually liable, Lurus was not in fact Plaintiffs' supervisor. This Court finds that these arguments are properly treated as support for 12(b)(6) motions.

■ The distinction between 12(b)(1) and 12(b)(6) motions is important. A court cannot consider matters outside the pleadings when determining a motion pursuant to Rule 12(b)(6), which goes to the merits of the claim. The trial court has discretion, however, to consider outside matters and thereby convert the 12(b)(6) motion into a motion for summary judgment under Rule 56(c). FED. R.CIV.P. 12(b)[3]; Original Advisory Committee Note of 1937 ("[I]f the court does not

---

**3.** This rule provides in pertinent part: "If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." FED.R.CIV.P. 12(b).

exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56.") (cited in JEREMY C. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.09[3] (2d ed. 1995)); *see also Wilson–Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir.1991) ("Had the district court accepted and considered the affidavits relevant to the 12(b)(6) motion, the motion to dismiss for failure to state a claim would have been converted to a motion for summary judgment."). The burden on movants to succeed on Rule 56(c) motions is significantly less onerous than the burden imposed on movants making Rule 12(b)(1) motions. To succeed on summary judgment motions, movants must show that no reasonable factfinder could find for Plaintiff, based on material submitted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing genuine issues for trial. *Id.* at 256–57, 106 S.Ct. at 2514–15; *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir.1995). Thus, summary judgment is appropriate when the court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

■ By contrast, 12(b)(1) motions cannot typically be converted into motions for summary judgment. *Mims v. Kemp*, 516 F.2d 21, 23 (4th Cir.1975) ("[T]he only motion which properly can be converted into a motion for summary judgment when outside materials are considered is one filed under Rule 12(b)(6). . . ."). Motions under Rule 12(b)(1) do not go to the merits of the claim, but address only jurisdictional issues. Both grounds for Lurus's Motion to Dismiss lead the Court to treat the motion under Rule 12(b)(6).

First, Lurus claims that Plaintiffs have failed to assert facts sufficient to provide subject-matter jurisdiction over the Title VII claim. (Def.Mem.Supp.Mot.Dismiss, at 4.) The facts that go to this issue, which concern the liability of supervisors, are intertwined with Lurus' challenge to the merits of the claim, which concerns Plaintiffs' failure to state a cause of action. Both of these issues hinge on whether the complaint states a federal question. Precedent guides this Court to treat such a mixed claim under 12(b)(6). "[T]he courts have uniformly held that in such instances the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to subdivision b(6) or Rule 56." JEREMY C. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.07[2.–1] (2d ed. 1995) (citing *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *accord Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) ("[I]n those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute[, i]t is the better view that . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits.").

Second, the defense that Lurus did not in fact function as Plaintiffs' supervisor must also be treated as a 12(b)(6) motion, since it goes to the merit of Plaintiffs' claim. JEREMY C. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.07[2.–1]) ("[A] dismissal under (b)(1) is not on the merits. . . ."); *see Burgess v. City and County of San Francisco*, 955 F.2d 47, 1992 WL 26545 at *2 (9th Cir. Feb. 18, 1992) (classifying part of 12(b)(1) motion as a 12(b)(6) motion where facts relevant to determining subject matter jurisdiction went directly to the merits of plaintiff's claim).

## III. DISCUSSION

### A. Individual Liability Under Title VII

■ Title VII prohibits sex discrimination by an employer. The statute defines "employer" to include "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person. . . ." 42 U.S.C. § 2000e(b) (1988). Lurus claims that this Court should dismiss Plaintiff's Title VII claim against him because, as an individual supervisor, he does not fall within the statutory definition of "employer". (Def.'s Mem.Supp.Mot. to Dismiss at 4.) A remarkable number of intra- and intercircuit splits exist on the issue of whether supervisors are "agents" and wheth-

er they therefore may be held individually liable for sexual harassment under Title VII.[4]

 In the Fourth Circuit, however, precedent states that "employees who fit the statutory definition of an employer may be held personally liable for violations of Title VII." *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *aff'd in pertinent part,* 900 F.2d 27 (4th Cir.1990); *accord Herring v. F.N. Thompson, Inc.,* 866 F.Supp. 264, 266 (W.D.N.C.1994) ("Paroline does hold an employee, when acting as an employer with supervisory authority over a fellow employee, may be held personally liable under Title VII."). The proper inquiry closely examines the relationship between the individual supervisor and the plaintiff.

> [An individual] qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises *significant control* over the plaintiff's hiring, firing *or conditions of employment.* ... [A]n employee may exercise supervisory authority over the plaintiff for Title VII purposes even though the company has formally designated another individual as the plaintiff's supervisor. As long as *the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff,* that employee will hold 'employer' status for Title VII purposes.

*Paroline,* 879 F.2d at 104 (emphasis added). If the Defendant qualifies as an employer, he

"may be held liable for any actionable sexual harassment in which he personally participated." *Id.* at 106. The *Paroline* court found it significant that the individual defendant in that case personally gave the plaintiff at least one work assignment. *Id.*

Similarly, this Court denied summary judgment on a Title VII claim against an individual supervisor where the defendant had "exerted authority and as a supervisor over the terms and conditions of [plaintiff's] employment". *Magnuson v. Peak Technical Servs., Inc.,* 808 F.Supp. 500, 511 (E.D.Va. 1992), *aff'd,* 40 F.3d 1244 (4th Cir.1994). It found that "the proper inquiry is not whether [defendant's] alleged attempts to assert control over [plaintiff] ... were legitimate: rather, the focus should be on whether [defendant], in fact, exercised such supervisory authority." *Id.* at 511 n. 5.

Defendant principally relies on *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), to cast doubt on the precedential authority of *Paroline.* *Birkbeck* interpreted the liability provisions of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1994), holding that ADEA shields individuals performing plainly delegable duties. Because ADEA and Title VII are identically worded, Defendant argues that the *Birkbeck* analysis, which he claims categorically rejects individual lia-

---

4. The Sixth Circuit has held that employers can be held individually liable. *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1986). District courts have also held supervisory employees liable. *E.g., Goodstein v. Bombardier Capital, Inc.,* 889 F.Supp. 760, 764 (D.Vt.1995); *Miller v. Cabletron Sys., Inc., et al.,* No. C–92–182–L, 1994 WL 258649 (D.N.H. Feb. 5, 1994); *Johnson v. University Surgical Group Assocs.,* 871 F.Supp. 979, 982–83 (S.D.Ohio 1994).

Several circuits have rejected individual liability. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1995 WL 572112, *17 (2d Cir. Sept. 27, 1995); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (holding individual capacity suits under Title VII inappropriate); *accord Cross v. Alabama State Dept. of Mental Health and Mental Retardation,* 49 F.3d 1490 (11th Cir.1995); *see also EEOC v. AIC*

*Security Investigations, Ltd.,* 55 F.3d 1276, 1280–81 (7th Cir.1995) (rejecting individual liability under ADA); *Lenhardt v. Basic Institute of Technology,* 55 F.3d 377, 380–81 (8th Cir.1995) (rejecting individual liability under similarly worded Missouri statute).

Conflicting opinions have emerged within the Fifth Circuit. *Compare Hamilton v. Rodgers,* 791 F.2d 439, 443 (5th Cir.1986) ("A person is an agent under § 2000e(b) if he participated in the decision-making process that forms the basis of the discrimination.") (internal citations omitted) *with Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir.1990) (noting that Title VII should be liberally constructed to include immediate supervisors when delegated the employer's traditional rights).

The Tenth Circuit has recently declared that this question remains open. *Ball v. Renner,* 54 F.3d 664 (10th Cir.1995).

bility for supervisors, should apply equally to Title VII.

Lurus' reliance on *Birkbeck* is misplaced. He declines to address a critical footnote of the opinion, which states: "An employee ... may not be shielded as an employer's agent in all circumstances. We address here only personnel decisions of a plainly delegable character." *Id.* at 511 n. 1. *Birkbeck* rejected individual liability in the case of a company vice president, who was carrying out the company's layoff decisions. *Id.* at 509. The court found that, in this context, "personal liability would place a heavy burden on those who routinely make personnel decisions for enterprises employing twenty or more persons...." *Id.* at 510.

This Court has carefully heeded this footnote and its impact on the issue of individual liability. In *Mitchell v. RJK of Gloucester, Inc.*, the Court stated: "This is not to say that an individual will never qualify as an 'employer' under Title VII.... *Birkbeck* narrowed *Paroline* ... by stating that its conclusion that individuals were not liable under the ADEA did not shield an employer's agent in all circumstances, but only in instances involving 'personnel decisions of a plainly delegable character.'" 899 F.Supp. 246, 248 (E.D.Va.1995) (citing *Birkbeck*, 30 F.3d at 510 n. 1). Further, the Court has analyzed its decisions rejecting individual liability in the following manner:

> [M]ore recent decisions ... reflect a ... consensus that supervisors ... cannot be held liable under ... Title VII in their individual capacities, *at least, for certain kinds of employment-related decisions*....
>
> ....
>
> *Birkbeck* ... forecloses individual liability *for personnel decisions of plainly delegable nature.*
>
> Although *Birkbeck* substantially limited the holding in *Paroline*, it did not completely eviscerate it....

*Stephens v. Kay Management Co., Inc.*, 907 F.Supp. 169, 172–74 (E.D.Va.1995) (emphasis added). Thus, *Paroline* retains its power in this Court. *See Herring*, 866 F.Supp. at 266 (finding *Paroline* binding on the issue of individual liability); *Frye v. Virginia Trans-*

*former, et al.*, No. 95cv399, at 3–4, 1995 WL 810018 (W.D.Va. Nov. 29, 1995) (same).

Defendant has thus overstated the effect of *Birkbeck*. The Court is aware of some opinions that support his case. *Dixon v. State Farm Fire & Casualty Ins. Co.*, No. 4:94cv165, 1995 WL 810016 (E.D.Va. August 23, 1995) (adopting Magistrate Judge's Report and Recommendation which relied on *Birkbeck* and *Miller* to deny individual liability in sexual harassment claim); *Andrade v. Mayfair Management, Inc.*, No. 2:94cv1034 (E.D.Va. May 15, 1995) (same); *Lane v. David P. Jacobson & Co., Ltd.*, 880 F.Supp. 1091, 1095 (E.D.Va.1995) (relying on *Birkbeck* and *Miller* to deny individual liability in Title VII sexual harassment claim); *Ellers v. ITT Corp.*, No. 94–0420–R, 1994 WL 801482, at \*2 (W.D.Va. Nov. 22, 1994) (same), *overruled by Frye v. Virginia Transformer, et al.*, No. 95cv399, at 3–4 (W.D.Va. Nov. 29, 1995). However, the Court here clarifies its interpretation of *Birkbeck*. The need for such clarification is evidenced by *Frye*, which overruled *Ellers* to the extent that it rejected liability for individual supervisors *per se*. *Frye v. Virginia Transformer, et al.*, No. 95cv399, at 3–4 (W.D.Va. Nov. 29, 1995). This court holds that supervisors may be individually liable in Title VII cases where they wield significant control over plaintiffs and their conduct cannot be categorized as a plainly delegable duty. *See Birkbeck*, 30 F.3d at 511 n. 1; *Paroline*, 879 F.2d at 104; *Frye*, No. 95cv399, at 4; *Herring*, 866 F.Supp. at 266; *Mitchell*, 899 F.Supp. at 248, 249.

In the instant case, the Court is squarely presented with the supervisory situation that the *Birkbeck* footnote left open. Unlike the vice president in *Birkbeck*, who was effectively executing the policies of the company, Defendant Lurus allegedly acted in a manner that was personally offensive to Plaintiffs. *Birkbeck's* rejection of liability for an employee who carries out routine, delegable duties does not apply to bar the instant claim against Lurus.

Although other circuits' opinions are not binding on this Court, this opinion will address the Ninth Circuit *Miller* decision,

which has been cited with approval in some opinions by this Court.[5] *Miller* easily dismissed the Fifth Circuit's concern expressed in *Hamilton v. Rodgers* that rejecting individual liability under Title VII would "encourage supervisory personnel to believe that they may violate Title VII with impunity".[6] The court stated:

> No employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation. An employer that has incurred civil damages because one of its employees believes he can violate Title VII with impunity will quickly correct that employee's erroneous belief.

*Miller*, 991 F.2d at 588.

The Court disagrees with this analysis. To unconditionally release employees from personal liability would eviscerate Title VII's antidiscriminatory force. *Jendusa*, 868 F.Supp. at 1011–12. The spirit of Title VII would become attenuated if it were forced to rely on market to persuade employers to correct the discriminatory conduct of their employees. Instead, Title VII holds individuals themselves liable for their illegal conduct.

Lurus rebuts this argument by noting that ADEA, like Title VII, restricts liability to employers of a minimum number of employees but does not place any similar limitation on individuals' liability. Since Congress could not have intended to shield corporations but not individuals, Lurus argues, the word "agent" merely codifies the *respondeat superior* doctrine. *Id.* at 510. Congress set similar limits on employers in the Civil Rights Act of 1991, which caps the total amount of compensatory and punitive damages recoverable from an employer according to its number of employees. 42 U.S.C. § 1981a(b)(3)(A) (Supp. IV 1988). Lurus argues that Congress could not have contemplated individual liability if it did not see fit similarly to cap damages for individuals. (Def.Mem.Supp.Mot.Dismiss, at 5.)

■ The Court does not find this argument persuasive in the context of supervisors' nondelegable actions. Congress imposed a limit on employer's *respondeat superior* liability to relieve small corporations from an undue burden on their businesses. This market concern is absent with respect to individual supervisors who engage in nondelegable conduct. *Accord Stephens v. Kay Management Co., Inc., et al.*, 907 F.Supp. 169, 174 (E.D.Va.1995) (noting that Title VII's deterrent effect derives from holding employers liable and holding individual supervisors "individually liable for personnel actions which are not of a plainly delegable nature"); *Mitchell*, 899 F.Supp. at 249 (distinguishing individual liability in sexual harassment cases from other cases, in which individual liability would be illogical given the statutory cap on businesses). Precedent supports this interpretation, which upholds the antidiscriminatory purpose of Title VII while simultaneously heeding the limits Congress set on employers' *respondeat superior* liability and on individuals who merely carry out delegable duties. Here, Plaintiffs clearly challenge actions that were not delegable.

### B. Lurus' Position as Plaintiffs' Supervisor

■ Even if supervisors are individually liable under Title VII, Lurus moves to dismiss the action on the grounds that he did not in fact function as Plaintiffs' supervisor. *Paroline* and *Birkbeck* guide this Court's determination of Lurus's position for purposes of liability. That is, Lurus will fall within Title VII's definition of supervisor if he is found to have wielded significant control over conditions of employment, *Paroline*, 879 F.2d at 104, and if he exercised power that was plainly nondelegable, *Birkbeck*, at n. 1.

■ Although Plaintiffs' complaints allege that Lurus was *a* supervisor at Metro, the complaints do not allege that he was

---

**5.** The Court notes that *Miller* has been expressly rejected and questioned by courts around the country. *See, e.g., Goodstein*, 889 F.Supp. at 764; *Jendusa v. Cancer Treatment Centers of America, Inc.*, 868 F.Supp. 1006, 1012 (N.D.Ill.

1994); *Miller*, No. C–92–182–L, 1994 WL 258649 (D.N.H. Feb. 5, 1994); *Johnson*, 871 F.Supp. at 982–83.

**6.** 791 F.2d 439, 443 (5th Cir.1986).

*their* supervisor. Supervisory control over Plaintiffs can be inferred, however, from Plaintiffs' allegation that Lurus offered to give them a day off in exchange for joining him in a hot tub. (Pls.' Comp. ¶ 13.h.) In addition, because the Court has decided that it will treat the motion under 12(b)(6), it can also consider Plaintiffs' affidavits stating their belief that Lurus was their supervisor by converting it into a motion for summary judgment.[7] *See infra* part II. Plaintiff Shoemaker claims that she was "tasked" to assist Lurus in opening new divisions each year, purchased inventory that required Lurus' approval, and worked with Lurus to create spreadsheets for the financial services division. (Shoemaker Aff. # 2 ¶¶ 3–5.) Plaintiff Brantley claims that she was "tasked" to work directly with Lurus in the inventory of all assets and other projects. (Brantley Aff. # 2 ¶¶ 3, 5.) Further, counsel provided detail at oral argument concerning the environment at the small office in which Plaintiffs and Lurus worked,[8] as well as Metro's employment hierarchy,[9] both of which indicated that Lurus had a position of power over Plaintiffs. Lurus conceded that Plaintiffs may be subjected to administrative action if they had refused to do as he asked. Lurus denies, however, that he managed or supervised Plaintiff, (Lurus Aff. ¶ 4), and at oral argument he denied that he participated in hiring or firing Plaintiffs. For purposes of a motion for summary judgment, this argument is insufficient. The Court finds that a genuine issue of material fact exists concerning whether Lurus exercised significant supervisory control over Plaintiffs' working conditions. This issue requires further development at trial. Accordingly, Plaintiffs complaints survive this summary judgment motion.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Lurus' Motion to Dismiss.

7. The parties also disagree concerning Lurus' position as a member of the Metro Board of Directors. Defendant denies holding this position (Lurus Aff. at ¶ 3), while Plaintiffs note that they have not yet obtained sufficient discovery to support her contrary assertion. (Pl.'s Mem. Supp.Ans.Mot. to Dismiss, at 1–2.)

The Clerk is **DIRECTED** to send a copy of this order to counsel for Plaintiffs and counsel for the Defendants.

It is so **ORDERED.**

8. Defense counsel represented that Plaintiffs were among 38 total employees in the Virginia Beach office.

9. Lurus, who was Director of Finance, was one of four corporate directors who reported to the president of the company. (Def.'s Ex. 1.)