**Lorraine STORR, Plaintiff,**

v.

**ANDERSON SCHOOL and William Doyle, Defendants.**

**No. 95 Civ. 2351 (WCC).**

United States District Court, S.D. New York.

March 13, 1996.

---

Gellert & Cutler, P.C., Poughkeepsie, New York (Richard B. Wolf, of counsel), for plaintiff.

Lester Schwab Katz & Dwyer, New York City (Richard Granofsky, of counsel), for defendant, William Doyle.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Lorraine Storr ("Storr") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§. 2000e–3 and e–5 ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 626(c) (the "ADEA"), section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and New York Executive Law § 297. Plaintiff asserts claims for sexual harassment, sex discrimination and age discrimination against her former employer, the Anderson School (the "Anderson School," or the "School"), and against William Doyle ("Doyle"), an employee of the School and a supervisor of plaintiff during times relevant to this case. The case presently is before the court on defendant Doyle's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) on the ground that a supervisor cannot be found individually liable under Title VII or the ADEA. For reasons discussed below, defendant Doyle's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Storr, a fifty-five year old woman, worked for the Anderson School, a New York State funded special educational school, for six years as a cook, and on occasion as a child care worker. Storr was employed in an Intermediate Care Facility for developmentally disabled, primarily autistic children. Storr was terminated from employment at the School in April 1994. Defendant Doyle supervised the Intermediate Care Facility at which Storr was employed at the time of her termination.

## DISCUSSION

On a motion to dismiss under Rule 12(b)(6), we accept as true all allegations in

the complaint and draw all reasonable inferences in favor of plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## I. Title VII and the ADEA

Title VII of the Civil Rights Act prohibits discrimination based upon sex by an "employer." 42 U.S.C. § 2000e–2. Similarly, the ADEA applies to discriminatory actions based on age by an "employer." 29 U.S.C. § 623(a). Under Title VII:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person.

42 U.S.C. § 2000e(b).[1]

■ Defendant Doyle argues that the plaintiff's claims should be dismissed because individuals do not qualify as employers under this statutory definition. Plaintiff, on the other hand, urges this court to accept the "plain meaning" of the statutory language in concluding that Doyle, as an agent of the School, is an "employer" within the meaning of the Act. *See Goodstein v. Bombardier Capital, Inc.,* 889 F.Supp. 760 (D.Vt.1995) (Parker, J.):

> Because the statute speaks with such clarity there is no need to look beyond the statutory language in an attempt to divine Congressional intent.... [T]he statute means what it says. Both employers of 15 or more persons and their agents may be held liable for Title VII violations.

*Id.,* at 765.[2]

■ The canons of statutory construction require a court to recognize "that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). One must not move beyond the language, except "in the rare cases [in which] the literal application of a statute [would] produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995). This appears to be such rare case. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995).

Courts of Appeals in at least four circuits, including the Second Circuit, have considered the question of a supervisor's individual liability and have held that a supervisor cannot be sued in his or her individual capacity under Title VII or the ADEA. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995) (supervisors not individually liable under Title VII definition of "employer"); *Smith v. Lomax,* 45 F.3d 402, 403–04 n. 4 (11th Cir. 1995) (Title VII and ADEA); *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.) (Title VII), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir. 1993) (Title VII and ADEA), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *see. also E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276 (7th Cir.1995) (owner and sole shareholder not individually liable under Americans with Disabilities Act); *Lenhardt v. Basic Institute of Technology,* 55 F.3d 377 (8th Cir.1995) (supervisor not an "employer" under a Missouri state statute similar to Title VII and the ADEA). "The consensus of these courts is that Title VII actions brought against individual employees are against those employees in their 'official' capacities, and that liability can be imposed only upon the common

---

1. The definition of "employer" in Title VII mirrors the definition in the ADEA, and courts have applied arguments regarding individual liability to the two statutes interchangeably.

2. Judge Parker, who now sits on the Second Circuit Court of Appeals, has stood by this position in his dissent in a Second Circuit case that has addressed this issue. *See Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995).

employer of the plaintiff and of the individual fellow employees who are named as defendants." *Lenhardt*, 55 F.3d at 380. *But see Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989) (supervisory personnel may be personally liable under Title VII), *rev'd in part, aff'd in relevant part*, 900 F.2d 27 (4th Cir.1990) (en banc); *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986) ("individuals may be held liable ... as 'agents' of an employer under Title VII"); *Goodstein*, 889 F.Supp. at 764–65 (Parker, J.) (supervisor may be liable as agent of employer under Title VII); *Shoemaker v. Metro Information Services*, 910 F.Supp. 259, 265 (E.D.Va.1996) (supervisors who wield significant control over plaintiffs may be individually liable under Title VII); *Vakharia v. Swedish Covenant Hosp.*, 824 F.Supp. 769, 785 (N.D.Ill.1993) (decision-making employees may be liable in their individual capacities under Title VII).

According to the Second Circuit, "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka*, 66 F.3d at 1317. *See also Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 n. 2 (2d Cir.1995) (dismissing Title VII claim against individual employee in light of *Tomka* ). In *Tomka*, the court found that the statutory scheme and remedial provisions of Title VII indicate that Congress intended to limit liability to employer-entities with fifteen or more employees. *Id.*, at 1314. The court concluded, "[a] finding of agent liability ... would lead to results that Congress could not have contemplated." *Id. See also Ryan v. Grae & Rybicki, P.C.*, 1995 WL 170095, at *3 (E.D.N.Y. March 31, 1995). ("[I]t is illogical to suggest that liability would be restricted to employers with more than a certain number of employees and simultaneously decide that individuals can be held personally liable.").

The *Tomka* majority first looked to the statutory scheme of Title VII and reasoned that because Congress decided to protect small employers "in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims," it was "inconceivable" that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees. *Id.*, at 1314 (citing *Maxwell's Int'l*, 991 F.2d at 587).

The *Tomka* court then analyzed Title VII's remedial provisions and concluded that "Congress never intended to hold agents individually liable for violations of the Act." *Id.* The court looked to the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for insight "into Congress' intent on the issue of individual liability." *Id.*, at 1315 n. 13. Based on this approach, the court reasoned:

> The CRA of 1991 adds compensatory and punitive damages to the remedies available to a victim of intentional discrimination.... Although money damages are of the type that an individual can normally be expected to pay, Congress calibrated the maximum allowable damage award to the size of the employer and failed to repeal the exemption for defendants with less than fifteen employees.... In addition, the CRA of 1991 does not contain similar limits on damage awards against agents of an employer, or even address the subject of individual liability.

*Id.*, at 1315. The *Tomka* majority thus concluded that Congress must have "contemplated that only employer-entities could be held liable for compensatory and punitive damages, because 'if Congress had envisioned individual liability ... it would have included individuals in this litany of limitations and discontinued the exemption for small employers ...' " *Id.* (citing *Maxwell's Int'l*, 991 F.2d at 588 n. 2).

The *Tomka* dissent argued that the majority's reading reduces the "and any agent" clause to mere surplusage. *Id.*, at 1319 (Parker, J., dissenting). "Absent this clause, Title VII would nevertheless permit respondeat superior liability against employers for the acts of their agents under common law principles." *Id.* However, as the *Tomka* majority reasoned, the agent clause does serve an independent purpose with regard to the scope of an employer's vicarious liability for the acts of its agents: namely, that an employer's liability should be based on common law agency principles. *Id.*, at 1316. *See also Ryan*, 1995 WL 170095, at *3 ("The legisla-

ture's choice to define 'employer' with a minimum threshold as found in these statutes surely is meant to restrict liability to those above that threshold.").

Despite Judge Parker's thoughtful dissent in *Tomka*, we are constrained to follow the *Tomka* majority and we find persuasive its reasoning and that of the other cases that have held that supervisors are not individually liable under Title VII or the ADEA. *Cook*, 69 F.3d at 1241 n. 2. We believe this result strikes an appropriate balance between the interests that Congress sought to pursue. "A responsible employer who has a great interest in avoiding liability under these statutes will not engage in discriminatory acts and will train his supervisory personnel to comply with the laws as well." *Ryan*, 1995 WL 170095, at *3. "Indeed, the normally deep pocketed and publicity conscious employer ... can be counted upon to be the most effective guardian of the marketplace." *Id.* It is true that increasing the number of potentially liable defendants would increase deterrence, as businesses put more resources into avoiding liability. However, Congress has struck a balance between deterrence and societal cost, and we will not upset that balance. We conclude that individuals who do not otherwise meet the statutory definition of "employer" cannot be liable under Title VII or the ADEA.

Plaintiff all but concedes, as she must be in light of *Tomka*, that the federal discrimination claims against Doyle must be dismissed. Plaintiff argues, however, that Doyle could be individually liable under the New York Human Rights Law, N.Y.Exec.Law § 297 (the "HRL").

## II. New York Human Rights Law

 The New York HRL prohibits an "employer" from discriminating on the basis of age or sex. N.Y.Exec.Law § 296(1)(a) (McKinney 1993). Unlike its federal counterparts, the HRL does not include an "and any agent" clause in the definition of employer. *See* N.Y.Exec.Law § 292. The HRL "provides no clue to whether individual employees of a corporate employer may be sued under its provision." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 660,

473 N.E.2d 11, 12 (1984) (citing N.Y.Exec. Law § 292(5)). In *Patrowich*, the New York Court of Appeals held that an employee is not individually subject to suit under section 296 of the HRL as an employer "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id.* New York state courts have held that the standards set forth in *Patrowich* determine the issue of individual liability under the HRL. *See, e.g., Foley v. Mobil Chemical Co.*, 214 A.D.2d 1005, 626 N.Y.S.2d 908, 909 (1995) (Defendant "is not subject to a discrimination suit under the Human Rights Law unless it is shown that he has an ownership interest in the corporation or the power to do more than carry out personnel decisions made by others."); *Monsanto v. Electronic Data Systems Corp.*, 141 A.D.2d 514, 529 N.Y.S.2d 512 (1988) ("[A] corporate employee is not individually subject to discrimination suits under the Human Rights Law 'if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.'"); *Petri v. Bank of New York Co.*, 153 Misc.2d 426, 582 N.Y.S.2d 608, 612 n. 2 (N.Y.Sup.Ct.1992) ("[T]he liability of [individual defendants] depends upon their power over personnel decisions."). Plaintiff does not allege in the Amended Complaint that Doyle has an ownership interest in the Anderson School or that he had the power to hire or fire plaintiff.

The *Tomka* court, however, reversed the district court's dismissal of a New York state discrimination claim based on section 296(6) of the HRL, *Tomka*, 66 F.3d at 1317, which provides:

It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

N.Y.Exec.Law § 296(6). The *Tomka* court noted that, "[b]ased on [the language of section 296(6)], several courts have distinguished *Patrowich* by holding that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." *Tomka*, 66 F.3d at 1317 (citing *Poulsen v.*

*City of North Tonawanda, N.Y.*, 811 F.Supp. 884, 900 (W.D.N.Y.1993); *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1180–81 (S.D.N.Y.1992); *Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127, 135–36 (N.D.N.Y. 1990)). *See also Persaud v. S. Axelrod Co.*, 1996 WL 11197, at *3 (S.D.N.Y. Jan. 10, 1996) (plaintiff may maintain claims against an individual defendant for violations of the New York HRL if the individual defendant participated in the conduct giving rise to the discrimination claim) (citing *Tomka*, 66 F.3d at 1317). At least one New York state court has supported *Tomka*'s reading of section 296(6) of the HRL and *Patrowich. See Peck v. Sony Music Corp.*, 632 N.Y.S.2d 963, 963 (N.Y.App.Div.1995) ("The Executive Law, §§ 296(6) and 296(7), provides that an individual may be held liable for aiding and abetting discriminatory conduct. *Patrowich* ... is not a bar to maintenance of the action."); *cf. Steadman v. Sinclair*, 636 N.Y.S.2d 325, 326 (N.Y.App.Div.1996) (individuals may be held liable as aiders and abettors under section 296(6) for aiding employer in instigating retaliatory lawsuit in response to filing of EEOC complaint). *But see Falbaum v. Pomerantz*, 891 F.Supp. 986, 992 (S.D.N.Y.1995) (dismissing claim under section 296(6) of the HRL: "[T]he limitation embodied in the statutory definition of 'employer' and in *Patrowich*, could be easily evaded by alleging claims either under an aiding and abetting or retaliation theory.... The various parts of a statute should be construed to give meaning to all.").[3] In the present case, plaintiff has alleged that Doyle created a hostile work environment by making sexually lewd remarks and derogatory comments about plaintiff's age while in her presence. Amended Compl. ¶¶ 6, 7, 11. Under the standard set forth in *Tomka*, these allegations are sufficient to satisfy section 296(6).

## CONCLUSION

For the foregoing reasons, defendant Doyle's motion to dismiss is granted with prejudice as to plaintiff's federal claims, and denied as to plaintiff's state law claim.

SO ORDERED.

---

3. In an unreported decision, the New York Supreme Court also rejected aiding and abetting liability under section 296(6) of the HRL based on its reading of *Patrowich. See Cohen v. Alexander's Inc.*, 1987 WL 113754 (N.Y.Sup.Ct. Aug. 14, 1987).