ALFRED W. SPITZ, Appellant, *v.* MARTIN LESSER, Doing Business as PLAYTOWN PRODUCTS Co., Respondent.

Argued April 5, 1951; decided June 1, 1951.

*David L. Delman* for appellant. Plaintiff's damages are the minimum royalties guaranteed by defendant for the first year, or $2,500, minus the $150 given to plaintiff as an earnest. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Orester* v. *Dayton Rubber Mfg. Co.*, 228 N. Y. 134; *Broadway Photoplay Co.* v. *World Film Corp.*, 225 N. Y. 104; *Story Parchment Co.* v. *Paterson Parchment Paper Co.*, 282 U. S. 555; *Riggs* v. *Palmer*, 115 N. Y. 506; *People* v. *Schmidt*, 216 N. Y. 324; *Haughey* v. *Belmont Quadrangle Drilling Corp.*, 284 N. Y. 136; *MacGregor* v. *Watts*, 254 App. Div. 904; *Steitz* v. *Gifford*, 280 N. Y. 15; *Industrial & Gen. Trust, Ltd.*, v. *Tod*, 180 N. Y. 215; *Central Trust Co.* v. *West India Improvement Co.*, 144 App. Div. 560; *Baer* v. *Durham Duplex Razor Co.*, 228 App. Div. 350.)

*Samuel Herbsman* for respondent. I. The proper measure of damages is the value of the contract at the time of the breach, as limited by the provision giving defendant the option to cancel. (*Warth* v. *Liebovitz*, 179 N. Y. 200; *Watson* v. *Russell*, 149 N. Y. 388; *Custen* v. *Robison*, 180 App. Div. 384; *Bitterman* v. *Gluck*, 256 App. Div. 336; *Chatham Plan, Inc.*, v. *Clinton Trust Co.*, 246 App. Div. 498.) II. There is no justification for allowing damages which exceed 5% of shipments up to April 1, 1949, in the absence of evidence of special damages. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205.)

FROESSEL, J. Plaintiff, inventor of a toy carrousel, entered into a contract with defendant on October 27, 1948, whereby the latter, " Under an exclusive arrangement " with plaintiff, agreed to " produce " and make the toy " for mass production

sales "; to " promote, market and ship same, under our own expense "; and by January 2, 1949, " to have production samples * * * ready for market, complete with printed containers." Defendant also agreed to pay plaintiff a royalty of 5% on the first $100,000 of net sales, 3% thereafter, and " a Minimum for the first year — 1949 — of not less than " $2,500; subject, however, to his right to " return this item * * * not later than Apr. 1st — 1949 — after the Toy Show ", in which event full royalties were to be paid for any and all goods shipped under the agreement up to April 1, 1949, and the agreement, which otherwise continued for three years subject to further renewal, would thereby be terminated.

All the courts below agree that defendant breached the foregoing contract. Not only did he fail to manufacture any " production samples " or any printed containers, which he was required to do by January 2, 1949, but he purported to exercise his right to cancel the contract on January 24, 1949, long before the toy show scheduled for March 7, 1949, and only after which he had any right to do so. The trial court found that defendant's breach entitled plaintiff to the minimum royalties due under the contract, less $150 paid on account, as " the agreed measure of damages ". The Appellate Term affirmed without opinion, but the Appellate Division modified the judgment of the trial court by reducing the award of damages to the nominal amount of six cents.

We are of the opinion that the trial court was correct. " For a wrong, the law's ideal, not always realized, is compensation, neither more nor less. Theoretically the loss to an injured party because of a broken contract is its value to him." (*Orester* v. *Dayton Rubber Mfg. Co.*, 228 N. Y. 134, 136.) " The value to the plaintiff of an executory contract under which he is to receive a certain compensation for the doing of an act is ordinarily the amount of such compensation less what it would cost him to perform, and this is the general measure of damages for the defendant's wrongful repudiation of the contract." (1 Clark, New York Law of Damages, § 156, citing *Orester* v. *Dayton Rubber Mfg. Co., supra*, and numerous other cases.)

Plaintiff's contract represented to him a unique and valuable opportunity to market his invention, for, regardless of its other

provisions, defendant by said agreement was bound to have production samples ready for market on January 2, 1949, and thus ready for the toy show on March 7, 1949. By defendant's inexcusable breach, plaintiff has been denied this opportunity and the benefit of a valuable season. Defendant may not now profit by his own wrong by claiming that, because of his total breach, plaintiff had failed to establish any damages. If plaintiff cannot measure his damage in terms of the minimum royalties upon which the parties agreed, there is no satisfactory measure of his loss. If that were the law, the breaker of covenants would be cloaked with an immunity wrought from his own wrong. We cannot accept any such anomalous result, nor do we think precedent requires it.

Leaving aside for the moment the option to cancel, there can be no doubt that on defendant's default plaintiff, whose performance was already complete, would be entitled to the minimum damages agreed upon. Nor can it be disputed that had defendant performed his agreement by January 2, 1949, and prior to the toy show, he would have had the right to exercise his option to cancel after the toy show on March 7th, but not later than April 1, 1949, in which event he would have been liable in damages only for the agreed percentage of " all goods shipped under this agreement ". Since he not only failed to produce and market the toy as aforesaid, but also failed to exercise his conditional option to cancel in accordance with the provisions of the agreement authorizing same, he cannot destroy plaintiff's right to the minimum commissions of $2,500 mutually agreed upon for the first year.

This was the guaranteed compensation in the event of performance in other respects by defendant; it cannot be less by reason of his breach. Plaintiff may indeed have been damaged far more than this sum, but the minimum was all that could be proved. (*Baer* v. *Durham Duplex Razor Co.*, 228 App. Div. 350, affd. 254 N. Y. 570.) Even though this measure of damages may not be as mathematically accurate as might be desired, it should not be condemned for that reason (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Hedeman* v. *Fairbanks, Morse & Co.*, 286 N. Y. 240, 250), since contracts and the circumstances related thereto are so varying that there can be no inflexible

rule of damages (*Haughey* v. *Belmont Quadrangle Drilling Corp.*, 284 N. Y. 136, 142; *Steitz* v. *Gifford*, 280 N. Y. 15, 20; *Ehrenwirth* v. *Stuhmer & Co.*, 229 N. Y. 210, 221; *Taylor* v. *Bradley*, 39 N. Y. 129, 142–145).

Here, defendant agreed to pay minimum royalties reasonable in amount, and the use of such sum as the measure of damages for his total breach of the contract furnishes a sufficiently definite standard as a " practical means that will be just to the parties." (*Dunkel* v. *McDonald*, 272 App. Div. 267, 270, affd. 298 N. Y. 586.) The value of the contract may be found in the stipulated royalties for the period within which the breach occurred (see *Warth* v. *Liebovitz,* 179 N. Y. 200, 204–205). Since it is defendant's own wrong which has rendered it impossible for plaintiff to prove his damages with more certainty, he cannot complain of the alleged uncertainty. The reason for this has been well expressed by the Supreme Court of the United States in *Bigelow* v. *RKO Radio Pictures* (327 U. S. 251, 264–265):

" Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain.   *   *   *

" The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."

The judgment of the Appellate Division should be modified so as to reinstate the damages awarded in the judgment of the City Court, and as so modified affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY and DYE, JJ., concur with FROESSEL, J.; DESMOND and FULD, JJ., dissent for the reasons assigned by the Appellate Division in its *Per Curiam* opinion.

Judgment accordingly.