Neil TAGARE, Plaintiff,

v.

NYNEX NETWORK SYSTEMS COMPANY, Flag Limited, NYNEX Network Systems (Bermuda) Limited, NYNEX Corporation, NYNEX Worldwide Services Group, Joseph Timpanaro, Gabriel Yackanich, John Parry and Nicholas Reda, Defendants.

No. 95 Civ. 644 (WCC).

United States District Court,
S.D. New York.

April 10, 1996.

Lovett & Gould, White Plains, New York (Jonathan Lovett, of counsel), for Plaintiff.

Nynex Network Systems Co., White Plains, New York (J. Vann Vogel, Enid Rasenick, of counsel), for Defendants.

**1148**

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Neil Tagare ("Tagare") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the New York Human Rights Law, N.Y.Exec.Law § 292 *et seq.* ("HRL"), against (1) NYNEX Corporation, NYNEX Worldwide Services Group and NYNEX Network Systems Company ("NNS") (collectively, "NYNEX"), Delaware corporations having offices in White Plains, New York; (2) Flag Limited and NYNEX Network Systems (Bermuda) Limited, two Bermuda affiliates of NYNEX, and (3) Joseph Timpanaro, Gabriel Yackanich, John Parry and Nicholas Reda (the "Individual Defendants"), four individuals who were officers of the NYNEX entities during times relevant to this case.

Plaintiff alleges discrimination in the work place premised upon color and national origin, and retaliation for plaintiff's opposition to the alleged discrimination. Plaintiff also asserts a claim for breach of contract against NYNEX. The case presently is before the court on defendants' motion to dismiss pursuant to Fed.R.Civ.P. 9(b), 12(b)(6) and 17(a), or, in the alternative, pursuant to Rule 12(e), to require a more definite statement of the allegations in order to enable defendants to file a responsive pleading. For the reasons discussed below, defendants' motion is granted in part and denied in part.

### BACKGROUND

Plaintiff alleges the following facts in the Complaint. In or about 1989 plaintiff developed the concept of privatizing undersea fiberoptic cable projects for the purpose of establishing an international telecommunications system premised upon fiberoptic technology. In connection with that concept, plaintiff authored a pre-feasibility study in 1989 for what is now known as a Fiberoptic Link Around the Globe ("FLAG"). In or about 1990 plaintiff entered into a business relationship with defendants, prepared a formal feasibility study, and was promised a one percent equity interest in the project in

the event that he was able to secure a commitment to the project from India. In or about July 1991 plaintiff was retained by NYNEX to oversee and manage a business development group for the FLAG project. In that capacity plaintiff successfully obtained the agreement of various other countries to participate in the FLAG project. In or about July 1992 plaintiff determined to sever his relationship with NYNEX, purportedly because of NYNEX's failure to provide him the one percent equity interest in the project. Plaintiff was dissuaded from leaving defendants upon a renewed promise of the equity interest contingent upon continuation of the FLAG project after a then scheduled First Data Gathering Meeting. Approximately thirty-nine countries participated in or about April 1993 in the First Data Gathering Meeting, involving approximately forty international telecommunication carriers with potential capacity sales of approximately $300,000,000. In or about August 1993, plaintiff expressly relinquished his claim to the one percent equity interest in the FLAG project in exchange for employment with NYNEX as a Vice President of Marketing and Business Development for Project FLAG. A written agreement provides that plaintiff would be entitled to a bonus or series of bonuses determined by the value of fully executed agreements from telecommunication carriers and so-called "end-users" committing to capacity in connection with Project FLAG.

On December 9, 1994, plaintiff filed with the EEOC "a Charge of Discrimination alleging disparate treatment by reason of color, national origin and retaliation for his having opposed same in the workplace." Compl. ¶ 2. The EEOC subsequently issued a Right to Sue letter to plaintiff. *See id.* Plaintiff asserts claims for discrimination and retaliation under Title VII and the New York HRL. In addition, plaintiff alleges that NYNEX breached its contract with him by making it impossible for him to earn his bonuses.[1]

### DISCUSSION

#### I. Breach of Contract

Plaintiff concedes that, with respect to the breach of contract claim, the only proper

---

1. A claim for fraud was withdrawn voluntarily by plaintiff by stipulation dated October 20, 1995.

defendant is NNS. *See* Pl.'s Mem. of Law in Opp. to Motion to Dismiss, at 10-11. All other defendants therefore shall not be subject to plaintiff's claim for breach of contract.

## A. Rule 17(a)

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be prosecuted in the name of the real·party in interest." Defendants argue that plaintiff's breach of contract claim must be dismissed under Rule 17(a) because Telematics Business Development Company ("Telematics"), a company through which plaintiff conducts his business, is the real party in interest, or that plaintiff should be required to amend the Complaint to show that the proper party plaintiff is "Neil Tagare d/b/a Telematics Business Development Company."

■■■ Defendants have submitted as an exhibit a copy of a contract between Telematics and NNS, on which plaintiff appears to base his claim for breach of contract. However, we are not permitted to consider factual matters submitted outside of the Complaint unless the parties are given notice that the motion to dismiss is being converted to a motion for summary judgment under Rule 56, and are afforded an opportunity to submit additional affidavits. *See Festa v. Local 3 International Brotherhood of Elec. Workers,* 905 F.2d 35, 38 (2d Cir.1990) (parties must be afforded an opportunity to present material made pertinent by Rule 56 when a motion to dismiss is converted to a motion for summary judgment). On a motion to dismiss, we limit our determination to whether the plaintiff has stated a viable claim in the Complaint. *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). On this limited issue, we conclude that plaintiff has set forth sufficient allegations in the Complaint to support his claim that there is a direct employment relationship between NYNEX and plaintiff. Whether such an employment relationship exists may be disputed through the submission of evidence, but we deem it inappropriate at this time to consider matters outside the pleadings, as neither party has had "reasonable opportunity to present all material made pertinent . . . by Rule

56." Fed.R.Civ.P. 12(c). On a motion to dismiss under Rule 12(b)(6), a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Based on the factual allegations set forth in the Complaint, and drawing all reasonable inferences in favor of plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989), we conclude that plaintiff is the real party in interest in this action.

## B. Ripeness

■■ Defendants argue that plaintiff's breach of contract claim must be dismissed because the claim is not ripe and is too speculative. Defendants argue that the claim is not ripe because the contract is not due to expire until July 1996, and defendants may yet perform their obligations under the contract. Plaintiff alleges that

> [a]s Vice President of Marketing and Business Development it was agreed in writing that should a so-called Construction and Maintenance Agreement . . . be executed prior to July 31, 1996, Plaintiff would be entitled to a bonus or series of bonus [sic] determined by the value of the fully executed agreements from telecommunication carriers and/or so-called "end-users" committing to capacity in connection with Project FLAG. . . .

Compl. ¶¶ 19, 29. Because time remains for the bonuses to be earned and paid, defendants argue, plaintiff cannot assert a claim based on deprivation of the bonus earnings at this time.

■■■ To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach. *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.,* 893 F.Supp. 285, 290 (S.D.N.Y. 1995) (Conner, J.); *R.H. Damon & Co. v. Softkey Software Products, Inc.,* 811 F.Supp.

986, 991 (S.D.N.Y.1993). Each element need not be separately pleaded; all that is necessary is "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, as this Court previously has held, "'when pleading a claim for breach of an express contract, ... the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract.'" *Reuben H. Donnelley Corp.*, 893 F.Supp. at 291 (citing *R.H. Damon*, 811 F.Supp. at 991; 2A James W. Moore et al., Moore's Federal Practice ¶ 8.17[7] (2d ed. 1992)). The Complaint here is devoid of any such allegation.

Plaintiff contends, however, that NNS intentionally rendered his performance impossible. Every contract under New York law contains an implied covenant of good faith and fair dealing. *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 230 (2d Cir.1991). "This covenant includes 'an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.'" *Id.* (citing *Grad v. Roberts*, 14 N.Y.2d 70, 248 N.Y.S.2d 633, 637, 198 N.E.2d 26, 28 (1964)). *See also Wieder v. Skala*, 80 N.Y.2d 628, 593 N.Y.S.2d 752, 756, 609 N.E.2d 105, 109 (1992) (same); *Collard v. Incorporated Village of Flower Hill*, 75 A.D.2d 631, 427 N.Y.S.2d 301, 302 (1980) (implied covenant of good faith and fair dealing breached where one party to a contract seeks to prevent its performance by the other), *aff'd*, 52 N.Y.2d 594, 439 N.Y.S.2d 326, 421 N.E.2d 818 (1981). The concept is rooted in notions of common sense and fairness. *Wieder*, 593 N.Y.S.2d at 756. Plaintiff's allegations, if proven true, support a claim that NNS breached its covenant of good faith and fair dealing by preventing plaintiff from performing and earning the targeted bonuses. *See* Compl. ¶¶ 19–29. Under the liberal pleading requirements of the federal rules, *see* Fed.R.Civ.P. 8(a), plaintiff has set forth sufficient allegations to support a claim that NNS has breached its implied covenant of good faith and fair dealing.

Defendants argue that "the existence of any damage whatsoever is entirely speculative, and would have to be a matter of guesswork." Defs.' Motion to Dismiss the Compl., at 8. Plaintiff alleges in the Complaint that he would have received a bonus or series of bonuses determined by the value of fully executed agreements from telecommunication carriers and "end-users" that he was able to procure. *See* Compl. ¶ 19. He sets forth how much he was to earn depending on revenue he secured. *See id.* We are aware of decisions which have denied recovery on the ground that damages are too speculative. *See, e.g., James Wood General Trading Establishment v. Coe*, 297 F.2d 651, 658 (2d Cir.1961). However, it should be noted that *James Wood General Trading* was decided on appeal, after the case had been developed fully in the district court below. Furthermore, since it is defendant's alleged wrong which has rendered it impossible for plaintiff to prove his damages with certainty, defendant cannot complain of the alleged uncertainty that will play a part in the calculation of damages. *Spitz v. Lesser*, 302 N.Y. 490, 494, 99 N.E.2d 540, 542 (1951). As noted by *Spitz*, the reason for this principle has been well expressed by the Supreme Court of the United States in *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946):

> [E]ven where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances "juries are allowed to act upon probable and inferential, as well as direct and positive proof." [citations omitted] Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean that the more grievous the wrong done, the less likelihood there would be of a recovery.

The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. 327 U.S. at 264–65, 66 S.Ct. at 579–80. Therefore, where defendant is alleged to have interfered with and prevented plaintiff's performance, we are reluctant to dismiss plaintiff's claim on the ground that determining the degree of success that his performance would have achieved is speculative. We agree that, in order to prove that plaintiff would have secured these agreements and thus earned the bonuses, some inferences may have to be drawn. However, on a motion to dismiss, a court should read the complaint generously, and should not dismiss the complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02. Plaintiff is entitled to try to prove that NNS prevented him from earning the bonuses.

## II. Discrimination Claims Against Individual Defendants

### A. Title VII

Title VII of the Civil Rights Act prohibits discrimination based upon color or national origin by an "employer." 42 U.S.C. § 2000e–2. In addition, Title VII prohibits an "employer" from retaliating against an employee for opposing an unlawful discriminatory practice. 42 U.S.C. § 2000e–3(a). Under Title VII:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person.

42 U.S.C. § 2000e(b).

▆▆▆ Defendants argue that plaintiff's first and second claims against the Individual Defendants for discrimination under Title VII and retaliation under Title VII should be dismissed because individuals do not qualify as employers under this statutory definition. In light of a recent decision by the Second Circuit Court of Appeals, *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995) (supervisors not individually liable under Title VII definition of "employer"), plaintiff's Title VII claims for discrimination and retaliation must be dismissed as against the Individual Defendants.

### B. New York Human Rights Law

The New York HRL prohibits an "employer" from discriminating on the basis of race, color, or national origin. N.Y.Exec.Law § 296(1)(a) (McKinney 1993). Like its federal counterpart, the New York HRL also prohibits an "employer" from retaliating against any person who opposes a discriminatory practice. N.Y.Exec.Law § 296(3–a)(c) (McKinney 1993). However, the HRL "provides no clue to whether individual employees of a corporate employer may be sued under its provision." *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984) (citing N.Y.Exec.Law § 292(5)). In *Patrowich,* the New York Court of Appeals held that an employee is not individually subject to suit under section 296 of the HRL as an employer "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id.* New York state courts have adopted the test articulated in *Patrowich* in determining the issue of individual liability under the HRL. *See, e.g., Foley v. Mobil Chemical Co.,* 214 A.D.2d 1005, 626 N.Y.S.2d 908, 909 (1995) (Defendant "is not subject to a discrimination suit under the Human Rights Law unless it is shown that he has an ownership interest in the corporation or the power to do more than carry out personnel decisions made by others."); *Monsanto v. Electronic Data Systems Corp.,* 141 A.D.2d 514, 529 N.Y.S.2d 512 (1988) ("[A] corporate employee is not individually subject to discrimination suits under the Human Rights Law 'if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.' "); *Petri v. Bank of New York Co.,* 153 Misc.2d 426, 582 N.Y.S.2d 608, 612 n. 2 (Sup.Ct.1992) ("[T]he liability of [individual defendants] depends upon their power over personnel decisions."). Plaintiff does not allege in the Complaint that the Individual Defendants have an ownership interest in NYNEX or that they had the power to hire or fire plaintiff.

However, in *Tomka*, 66 F.3d at 1317, the Second Circuit reversed the district court's dismissal of a New York state discrimination claim based on section 296(6) of the HRL, which provides:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

N.Y.Exec.Law § 296(6). The *Tomka* court noted that, "[b]ased on [the language of section 296(6)], several courts have distinguished *Patrowich* by holding that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." *Tomka*, 66 F.3d at 1317 (citing *Poulsen v. City of North Tonawanda, N.Y.*, 811 F.Supp. 884, 900 (W.D.N.Y.1993); *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1180–81 (S.D.N.Y.1992); *Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127, 135–36 (N.D.N.Y. 1990)). *See also Storr v. Anderson*, 919 F.Supp. 144, 149 (S.D.N.Y.1996) (Conner, J.) (plaintiff may maintain claims against an individual defendant for violations of the New York HRL if the individual defendant participated in the conduct giving rise to the discrimination claim); *Persaud v. S. Axelrod Co.*, 1996 WL 11197, at *3 (S.D.N.Y. Jan. 10, 1996) (same) (citing *Tomka*, 66 F.3d at 1317). At least one New York state court has supported *Tomka*'s reading of section 296(6) of the HRL and *Patrowich. See Peck v. Sony Music Corp.*, 632 N.Y.S.2d 963, 963 (N.Y.App.Div.1995) ("The Executive Law, §§ 296(6) and 296(7), provides that an individual may be held liable for aiding and abetting discriminatory conduct. *Patrowich* ... is not a bar to maintenance of the action."); *cf. Steadman v. Sinclair*, 636 N.Y.S.2d 325, 326 (N.Y.App.Div.1996) (individuals may be held liable as aiders and abettors under section 296(6) for aiding employer in instigating retaliatory lawsuit in response to filing of EEOC complaint). *But see Falbaum v. Pomerantz*, 891 F.Supp. 986, 992 (S.D.N.Y.1995) (dismissing claim under

section 296(6) of the HRL: "[T]he limitation embodied in the statutory definition of 'employer' and in *Patrowich*, could be easily evaded by alleging claims either under an aiding and abetting or retaliation theory.... The various parts of a statute should be construed to give meaning to all.").[2] In the present case, plaintiff has alleged that the Individual Defendants participated in a plan to misappropriate from plaintiff his unique creative skills and world-wide telecommunications expertise with a view towards breaching their obligations to him because of his national origin and skin color. Compl. ¶¶ 4, 7–10. We are constrained by *Tomka*'s treatment of New York HRL claims against individual defendants, and thus find that the allegations in Tagare's Complaint are sufficient to satisfy section 296(6). *See Storr*, 919 F.Supp. at 149. *See also Luciano v. Olsten Corp.*, 912 F.Supp. 663, 668 (E.D.N.Y.1996) (individuals are not subject to liability under Title VII, but under certain circumstances are subject to personal liability under New York Human Rights Law) (citing *Tomka*, 66 F.3d at 1316–17). We therefore conclude that *Tomka* does not bar claims for discrimination or retaliation brought under the New York HRL.

### III. Retaliation Claims Against All Defendants

Under Title VII "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter...." 42 U.S.C. § 2000e–3(a). Similarly, the New York Human Rights Law provides that "[i]t shall be an unlawful discriminatory practice ... [f]or any employer ... to discharge or otherwise discriminate against any person because he has opposed any practices forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article." N.Y.Exec.Law § 296(3–a)(c) (McKinney 1993).[3]

---

**2.** In an unreported decision, the New York Supreme Court also rejected aiding and abetting liability under section 296(6) of the HRL based on its reading of *Patrowich. See Cohen v. Alexan-*

*der's Inc.*, 1987 WL 113754 (N.Y.Sup.Ct. Aug. 14, 1987).

**3.** Because these provisions are drafted so similarly, we address them simultaneously and treat

In order to state a claim for retaliation under Title VII, a plaintiff must allege facts showing (1) participation in a protected activity known to the defendant, (2) an employment action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse employment action. *Tomka*, 66 F.3d at 1308. The factual allegations supporting plaintiff's retaliation claim do not by any means represent a model pleading, but they do meet the minimum requirements to withstand a motion to dismiss.

In support of his retaliation claim, plaintiff alleges that defendants "[d]eliberately subject[ed] Plaintiff to a disparate course of treatment in the workplace by reason of his being of color and of Indian national origin and by reason of Plaintiff's objection to this treatment, redoubl[ed] their efforts to coerce his resignation by resort to denigrating references to India, Indian culture and/or Plaintiff's national origin." Compl. ¶ 28(m). Plaintiff alleges that defendants redoubled their discriminatory efforts *because* he objected to discriminatory treatment, and thus satisfies each leg of the pleading requirement as articulated by *Tomka* and the cases that it cites.[4]

## IV. Rule 12(e)

Defendants seek a more definite statement of allegations as to each of plaintiff's claims pursuant to Fed.R.Civ.P. 12(e). A motion pursuant to Rule 12(e) should not be granted "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Bower v. Weisman*, 639 F.Supp. 532, 538 (S.D.N.Y. 1986); *Boothe v. TRW Credit Data*, 523 F.Supp. 631, 635 (S.D.N.Y.1981). The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings. *Boothe*, 523 F.Supp. at 635. "The essence of a complaint is to inform the defendant as to the general nature of the action and as to the incident out of which a cause of action arose." *Bower*, 639 F.Supp. at 538.

Plaintiff's Complaint identifies the offending parties and the prohibited acts they are alleged to have committed. The fact that plaintiff attributes acts to "defendants" as a group does not render the Complaint so vague and ambiguous as to be unintelligible. The defendants have been given fair notice of the claims against them, and nothing prevents them from formulating a responsive pleading.

Defendants argue that the Complaint is "replete with allegations against 'defendants' which could be particularized." Defs.' Motion to Dismiss the Compl., at 29. Defendants' reliance on *Bower* is misplaced. In *Bower*, plaintiff employed the term "defendant" without specifying which of three defendants was being identified. *Bower*, 639 F.Supp. at 538. The court granted the motion for a more particular statement on the ground that a defendant could not effectively respond to the complaint unless it knew which claims plaintiff was asserting against it. *Id.* There is no such ambiguity in Tagare's Complaint. The Complaint at no point refers to a "defendant" without identifying which of nine defendants is being referred to. When plaintiff employs the term "defendants" he is referring to all of the defendants named in the Complaint. We see no reason why defendants are unable to formulate a responsive pleading just because plaintiff refers to all of the defendants as parties responsible for committing the alleged acts.

## CONCLUSION

For the foregoing reasons defendants' motion to dismiss is granted with respect to the third claim for breach of contract as against all defendants except NYNEX Network Systems Company. The motion to dismiss is granted with respect to the first and second claims (Title VII) as against the Individual Defendants. The motion to dismiss is denied

---

them identically. *See Tomka*, 66 F.3d at 1304 n. 4, 1307–1310 (discussing retaliation claims brought under Title VII and New York HRL simultaneously and treating them identically).

4. As discussed above in part II, Individual Defendants are not subject to the Title VII claim for retaliation.

in all other respects. Defendants' motion for a more definite statement is denied.

SO ORDERED.