Melodie Starita BOYCE,
Ed. D., Plaintiff,

v.

NEW YORK CITY MISSION SOCIETY; Robert W. Sheehan, Chairman of the Board of Directors of the New York City Mission Society; The Board of Directors of the New York City Mission Society; Emilio Bermiss, individually and as Executive Director of the New York City Mission Society, Defendants.

No. 96 Civ. 2480(DAB).

United States District Court,
S.D. New York.

May 5, 1997.

Warren J. Bennia, New York City (Warren J. Bennia, of counsel), for Plaintiff.

Kenny & Stearns, New York City (Gino A. Zonghetti, of counsel), for Defendants.

*MEMORANDUM and ORDER*

BATTS, District Judge.

Plaintiff, Melodie Starita Boyce, Ed. D., ("Boyce"), brings this cause of action alleging employment discrimination based on sex, disability and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); 42 U.S.C. §§ 1981a, 1988,[1] 12101 *et seq.;* New York Executive Law §§ 296 *et seq.;* and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* Plaintiff also asserts a claim for intentional infliction of emotional distress pursuant to New York State common law. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Defendants move to dismiss for failure to state a claim.

## I. BACKGROUND

In September 1993, Plaintiff, an African–American woman, was hired by the New York City Mission Society, ("Mission Society"), as the Executive Assistant to Emilio Bermiss ("Bermiss"), Executive Director of the Mission Society. (Compl. ¶¶ 5, 10.) At that time, Boyce was assigned managerial duties. (*Id.* ¶ 11.) Boyce's job title was changed from Senior Director Special Projects/Special Assistant to the Executive Director of the Mission Society ("Special Assistant"). (*Id.* ¶ 10.)

In or about July 1994, Boyce alleges that she was subject to a continual pattern of harassment at the Mission Society by Bermiss, Robert W. Sheehan ("Sheehan"), Chair-

man of the Board of Directors of the Mission Society, and the Board of Directors of the Mission Society (the "Board"). (*Id.* ¶¶ 7, 8, 11.) Specifically, Boyce claims the Defendants engaged in acts against her that included "yelling, cursing, belittling her doctoral degree, assigning secretarial duties to her, indicating that she was not liked, pounding on her office door when it was closed, defendant Bermiss indicating that he would put his foot up her ass[,] and termination of her employment." (*Id.* ¶ 11.)

On January 20, 1995, Bermiss asked Boyce to come to his office. Boyce complied and Bermiss locked and blocked the door preventing Boyce from leaving. (*Id.* ¶ 12.) While in the office, Bermiss accused Boyce of trying to take his job. (*Id.*) Boyce asked to be treated as a professional and continued her attempts to leave the office despite Bermiss' contrary efforts. (*Id.*) Eventually, Bermiss allowed Boyce to leave the office. (*Id.*)

As a result of Bermiss' mistreatment, Boyce allegedly suffered chest pains, shortness of breath, anxiety and humiliation. (*Id.* ¶ 13.) She obtained medical consultation and took disability leave from January 24, 1995, to February 2, 1995. (*Id.*)

Upon returning to work on February 3, 1995, Boyce discovered that all her work files and documents had been removed from her office and placed in boxes on the floor of Bermiss' office. (*Id.* ¶ 14.) Boyce was told that Bermiss indicated that her services were no longer needed. (*Id.*) Boyce also found a note in her office stating that Bermiss wanted to continue the discussion he had with her on January 20th. (*Id.*) Boyce went to see Bermiss and asked about her employment status. (*Id.* ¶ 15.) Bermiss told Boyce that he wanted to wait for the arrival of Lynn Law, Director of Development at the Mission Society, before having any further discussion with her. (*Id.* ¶¶ 15–16.)

Boyce returned to her office and began to experience shortness of breath and chest pains. (*Id.* ¶ 16.) She called a member of the Board and recounted what had transpired in her January 20th and February 3rd

---

1. Sections 1981a and 1988 are damage statutes.

discussions with Bermiss, indicating that because of the pain she was experiencing she could not wait for the arrival of Ms. Law. (*Id.*) The board member asked Boyce to send a packet of information explaining what had transpired between her and Bermiss to all the members of the Board. (*Id.*) Due to the pain she was experiencing, Boyce left work immediately after the conversation. (*Id.*) Documents indicating that Boyce had been harassed by Bermiss and had suffered harmful effects to her health, thereby requiring a leave of absence from work, were mailed to all the members of the Board on February 6, 1995. (*Id.* ¶ 17.)

On February 15, 1995, Boyce and her legal counsel met with members of an Executive Committee of the Board, including Defendant Sheehan. During the meeting Sheehan indicated that Boyce was still employed by the Mission Society and was being placed on a paid leave of absence. (*Id.*) Sheehan also indicated that during the leave, the Board would conduct an investigation of Boyce's allegations against Bermiss. (*Id.*) Sheehan indicated that he did not wish to comment on what potential impact the investigation would have on Boyce's future employment with the Mission Society. (*Id.*)

On April 7, 1995, Boyce and her legal counsel, met with Sheehan at the law offices of Chadbourne & Parke. (*Id.* ¶ 18.) During the meeting, Sheehan offered Boyce the option, in lieu of outplacement counselling paid for by the Mission Society, of staying on the payroll for an amount of time for which compensation would equal the cost of outplacement services. (*Id.*) Sheehan also asked Boyce to sign a release of all claims against the Mission Society and indicated that if Boyce did not accept the offer, her employment with the Mission Society would terminate on that date. (*Id.*)

Boyce rejected the offer and made a counter-offer which she said was subject to negotiation. (*Id.* ¶ 19.) Sheehan responded that no further discussion would occur, that he would seek legal counsel and would send a letter to Boyce within the following week. (*Id.*)

On April 11, 1995, Sheehan sent a letter to Boyce indicating that her employment and all benefits were terminated effective April 7, 1995. (*Id.* ¶ 20.) Sheehan also wrote that the Mission Society considered Boyce to have voluntarily resigned on February 3, 1995. (*Id.*) The letter also indicated that the Board of Trustees or the Board had conducted a thorough investigation of Boyce's allegations. (*Id.* ¶ 21.) Boyce was not privy to the information resulting from the investigation nor did she participate or contribute to the investigation. (*Id.*) The Board concluded there was no merit to Plaintiff's allegations. (*Id.*)

Boyce alleges that the Mission Society and Bermiss have manifested a continuous pattern of harassment, belittlement, humiliation and infliction of emotional distress upon her, and that her employment was terminated because of her sex, disability and/or in retaliation for complaining about such discriminatory treatment. (*Id.* ¶ 22.)

## II. DISCUSSION

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir.1995) (citations omitted); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court will grant such a motion only if after viewing plaintiff's allegations in a most favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Accordingly, the factual allegations set forth and considered herein are presumed to be true for the purpose of deciding the motions to dismiss.

### A. Sex Discrimination Pursuant to Title VII and Section 296

In her first cause of action, Plaintiff alleges discrimination based on sex and retaliation, pursuant to Title VII. In her second cause of action, Plaintiff alleges discrimination based

on sex, disability and retaliation, pursuant to New York State law. The Court will first address Plaintiff's sex discrimination claims.

Specifically, Boyce alleges that during the course of her employment at the Mission Society she was subject to discrimination on the basis of her sex. Title VII prohibits an employer from discriminating against an individual employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To state a legally sufficient claim of employment discrimination, a plaintiff must allege that she: (1) is a member of a protected class; (2) was qualified for a particular position; (3) was denied a privilege of her employment; (4) which denial occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir.1991).

■ A "complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a Court could find a violation of the Civil Rights Act, fails to state a claim under 12(b)(6)." *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (applying standards to a Title VII claim); *Yusuf v. Vassar College*, 827 F.Supp. 952, 955 (S.D.N.Y.1993) (applying these standards to a § 1981 and 20 U.S.C. § 1681 claim), *aff'd in part and rev'd in part*, 35 F.3d 709 (2d Cir.1994).

In the case at bar, Boyce's Complaint clearly satisfies the first and third pleading requirements for employment discrimination. Boyce expressly pleads that she is a woman and, therefore, a member of a protected class. Boyce also demonstrates she was denied a privilege of her employment by pleading that she received a letter from Sheehan on April 11, 1995, terminating her employment.

Difficulties arise, however, when examining her claims with respect to the second and fourth pleading requirements. The Complaint evinces scant factual support that the Plaintiff was qualified for the Special Assistant position. Although the Complaint does mention that Boyce held a doctoral degree in Education, it fails to state how such a degree prepared the Plaintiff for the managerial duties she was initially assigned to perform at the Mission Society. Nor does the Complaint point to an employer evaluation[2] reporting strong job performance or examples illustrating the Plaintiff's work as being of superior nature that would promote an impression that the Plaintiff was qualified for the position she held.

■ However, even if Plaintiff were qualified, the Complaint lacks specific factual allegations to support a pleading that the Plaintiff was discharged under circumstances giving rise to an inference of discrimination based on sex. In her Complaint, the Plaintiff alleges that she was subject to specific acts and a continual pattern of harassment by the Defendants, particularly Bermiss. She details that she was the target of yelling and cursing, including the comment that Bermiss "would put his foot up her ass," (Compl.¶ 11), that she was confined to Bermiss' office, and that her office was stripped of work files and other documents upon her returning from a disability leave. Yet, the Plaintiff fails to provide factual support illustrating how these acts and/or statements were motivated by or give rise to an inference of discrimination based on sex. Although Plaintiff is female and Bermiss, her supervisor, is male, there is no factual indication from the Complaint that their respective genders played any significant role in creating a discriminatory relationship between the two parties. Plaintiff does not state how any of the instances of yelling and cursing or other acts of harassment that she was allegedly subject to, directly or indirectly, involved her being female. Likewise,

**2.** The Mission Society's April 7, 1995 offer that Boyce continue to remain on the payroll carries little weight when evaluating whether she was qualified for her position. The offer to remain was not unconditional or permanent, but rather a opportunity for Boyce to be compensated with a commensurate amount with that of the cost of outplacement counselling services paid for by the Mission Society. In its proper context, such an offer falls short of supporting a pleading that the Plaintiff was qualified for her job position.

Plaintiff fails to provide any factual allegations to support her claim that her employment was terminated because of her sex.

Instead of pleading specific facts to support her allegations, Plaintiff resorts to conclusory assertions. She merely states that the termination of her employment resulted "because of her sex, disability and/or retaliation for complaining about such discriminatory treatment. . . ." Without factual allegations to provide support, such naked conclusory assertions are insufficient to withstand this motion, and the Plaintiff's claims are dismissed.

■ Plaintiff sex discrimination claims alleged in her second cause of action pursuant to the New York Executive Law are likewise dismissed. The New York Executive Law prohibits an employer from discriminating against an employee on the basis of her sex. N.Y. Exec. Law § 296(1)(a). The same analysis used to determine the sufficiency of a Title VII claim applies to employment discrimination claims arising under the New York Executive Law. *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992); *Strauss v. Microsoft Corp.,* 814 F.Supp. 1186, 1190 n. 5 (S.D.N.Y.1993). Accordingly, the claims are dismissed.

Although the Court holds that the allegations of the Plaintiff's Complaint fail to satisfy the minimum pleading requirements, it grants Boyce leave to amend. Where a court grants a dismissal for failure to meet minimum pleading requirements, "such a dismissal ordinarily should be accompanied by leave to file an amended complaint." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Lack of detail in specifying how the Plaintiff was discriminated against and ultimately terminated from her employment as a result of her sex is the primary deficiency of the Complaint on these two claims. Providing examples of statements and acts that involved the Plaintiff's sex, and describing how the motivating factor for the discrimination that the Plaintiff allegedly suffered was her sex, could render the Complaint sufficient to satisfy pleading requirements.

■ However, Plaintiff is not permitted to replead as to the Individual Defendants Bermiss and Sheehan. The Second Circuit in *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995), stated, "[w]e now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka,* 66 F.3d at 1313. Hence, all Plaintiff's Title VII claims against Defendants Sheehan and Bermiss, pursuant to *Tomka,* are dismissed.

**B. Retaliation**

■ In her first cause of action Plaintiff alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e–3(a), and in her second cause of action she alleges retaliation in violation of the New York Executive Law Section 296(1)(e), (7).

■ To make a prima facie case of retaliation, the Plaintiff must show that she was engaged in a protected activity; that the employer was aware of the activity; that the employee suffered adverse employment decisions; and that there was a connection between the adverse employment decision and the protected activity. *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988); *Tagare v. NYNEX Network Sys. Co.,* 921 F.Supp. 1146, 1153 (S.D.N.Y.1996).[3] Proof of the causal connection can be shown by the proximity in time between the two factors. *Manoharan,* 842 F.2d at 593.

Plaintiff does not set out what activity she undertook that resulted in an adverse employment decision. Reading the Complaint in a light most favorable to the Plaintiff, the Court assumes the Plaintiff claims she was fired in retaliation for having complained about the treatment allegedly inflicted on her by Bermiss. However, the Court cannot draw the next inference that Plaintiff was complaining that she was being discriminated against because of her sex. Accordingly, the retaliation claims are dismissed.

---

**3.** Stating a retaliation claim under New York State law is substantially similar to Title VII. *See, e.g., Tagare,* 921 F.Supp. at 1152 n. 3. *See also Song,* 957 F.2d at 1046; *Strauss,* 814 F.Supp. at 1190 n. 5.

C. Discrimination Based on Disability Pursuant to the ADA and New York Executive Law

In her second cause of action Plaintiff alleges discrimination based on an unspecified disability, in violation of the New York Executive Law.[4] In her fifth cause of action she alleges her termination was in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

The ADA provides the following:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A "covered entity" includes employers, 42 U.S.C. § 12111(2) and a "qualified individual with a disability" refers to "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

A plaintiff seeking relief under the ADA must establish that she is a disabled person within the meaning of the ADA, that she is otherwise qualified to perform the essential functions of her job, either with or without reasonable accommodation, and that she was terminated because of her disability. *Wernick v. Federal Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir.1996); *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir.1995).

The ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).[5] Here, reading the Complaint in the light most favorable to the Plaintiff, the Court assumes the Plaintiff is proceeding under (A). The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). While "working" is deemed a "major life activity," it has been held that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

There are three factors to consider when determining whether an individual is "substantially limited" in a major life activity: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; 3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). ADA interpretative guidelines further clarify the physical conditions intended to be within the scope of the Act by stating "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. pt. 1630 App.

The regulations further provide:

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not

---

4. The New York Executive Law prohibits an employer from discriminating against an employee on the basis of her disability. New York Exec. Law §§ 296(1)(a).

5. This is substantially similar to the definition in N.Y. Exec. Law § 292(21). Section 292(21) of the New York Executive Law defines disability as a "physical mental or medical impairment resulting from anatomical, physiological or neurologi-

cal conditions which prevents the exercise of a normal bodily function ... or ... a condition regarded by others as such an impairment, provided ... the term shall be limited to disabilities which do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held."

constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

■ Here, the Plaintiff fails to satisfy the basic pleading requirements for a viable ADA claim. Plaintiff never alleges that she is a disabled person within the meaning of the ADA or the New York Executive Law. The ailments that she cites, "shortness of breath and chest pains" do not satisfy the factors the EEOC has provided in determining whether an individual is "substantially limited" in a major life activity. Plaintiff's condition cannot be classified as severe, nor can the duration of such a condition be expected to have any permanent or long-term impact. Indeed, the Plaintiff's condition seems to fit the meaning of a "temporary, non-chronic impairment" that the EEOC has deemed does not qualify as a disability under the ADA. Likewise, while the Plaintiff's condition may limit her ability to work at the Mission Society, it does not "substantially limit" her "ability to perform either a class of jobs or a broad range of jobs."

Along with failing to establish in her Complaint that she is disabled under the ADA, Plaintiff also fails to allege any factual support that the Mission Society terminated her employment because of such a "disability." Accordingly, the Court dismisses this fifth claim and the last portion of the second cause of action.

### D. Intentional Infliction of Emotional Distress

■ Plaintiff's third cause of action seeks recovery for damages under the New York State common law tort of intentional infliction of emotional distress ("IIED"). New York courts have imposed a rigorous standard with respect to IIED. A viable claim under IIED must satisfy the rule set forth by the Restatement of Torts, Second, and adopted by the New York Court of Appeals in *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215 (1978), that: "Liability [for IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized community."

■ Here, the behavior complained of does not satisfy this requirement. Plaintiff alleges that the Defendants have subjected her to yelling, cursing, indications that she was not liked, having her office door pounded on when closed, and being temporarily confined in the office by a hostile supervisor. While such conduct is certainly not to be condoned nor considered acceptable, it does not qualify as being so outrageous and extreme in character that it "goes beyond all bounds of decency." *See, e.g., Caballero v. First Albany Corp.,* —— A.D.2d ——, 654 N.Y.S.2d 866 (3d Dep't 1997); *Murphy v. American Home Prods. Corp.,* 112 Misc.2d 507, 447 N.Y.S.2d 218, 219–20 (N.Y.Sup.Ct.), *modified on other grounds,* 88 A.D.2d 870, 451 N.Y.S.2d 770 (1st Dep't 1982), *aff'd,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y.1983), *rev'd on other grounds,* 136 A.D.2d 229, 527 N.Y.S.2d 1 (1st Dep't 1988); *see also Spence v. Maryland Cas. Co.,* 995 F.2d 1147 (2d Cir.1993). Accordingly, the Plaintiff's IIED claim is dismissed.

### E. Family Leave Claim

■ Plaintiff's fourth cause of action alleges that the Defendants' termination of her employment with the Mission Society violated the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.*

The Family and Medical Leave Act allows an eligible employee the right to take up to 12 weeks of leave during any 12–month period for one or more of the following reasons:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to per-

form the functions of the position of such employee.

29 U.S.C. § 2612(a)(1). An eligible employee who takes leave for one of the above reasons is entitled, upon return from such leave, "to be restored" to either the same position the employee held when the leave commenced or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1). An employer is prohibited from interfering or denying an eligible employee the rights provided for in the act. 29 U.S.C. § 2615(a)(1).

Plaintiff states she took two leaves of absence from the Mission Society due to shortness of breath and chest pains. The first leave lasted from January 24, 1995, to February 2, 1995. On February 3, 1995, the Plaintiff again left work and was then placed on a paid leave of absence by the Mission Society on February 15, 1996. Plaintiff alleges that a violation under Section 2615(a)(1) of the FMLA occurred when the Mission Society informed her on April 11, 1995, that her employment and all benefits were terminated, effective April 7, 1995, and that they deemed her to have resigned voluntarily on February 3, 1995.

Although the Plaintiff alleges that the Mission Society terminated her employment in violation of FMLA, it is unclear from the Complaint whether her employment is even covered by the Act. Section 2611(2)(A)(ii) defines an "eligible employee" under the FMLA as one who has been employed "for at least 1,250 hours of service" with an employer during the previous 12–month period. Plaintiff fails to pleads any facts establishing that she satisfies such a requirement. Section 2611(4)(A)(i) defines an employer covered under the FMLA as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." Plaintiff fails in her Complaint to provide any facts establishing that the Mission Society is an employer subject to the requirements of the FMLA. Likewise it is difficult to ascertain from the Complaint the date on which the Plaintiff alleges she began her second leave of absence, and whether this leave falls under the provisions of FMLA. Plaintiff states initially she left work on February 3, 1995, due to shortness of breath and chest pains. She then states that on February 15, 1995, the Mission Society placed her on paid leave of absence and told her not to report to work. The exact date that Plaintiff's second leave of absence occurred is never alleged in the Complaint.

Furthermore, although from the facts it can be ascertained that Plaintiff is most likely applying Section 2612(a)(1)(D) to her situation, the Plaintiff fails to specify what "serious health condition" rendered her unable to continue working. Plaintiff merely states she left work due to "shortness of breath and chest pains." The FMLA defines a "serious health condition" as: an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). The Plaintiff fails in her Complaint to specify factually whether she ever received inpatient care or is continuing to receive treatment by a health care provider.[6]

The legislative history of FMLA states "serious health conditions" include, but are not limited to the following:

> heart attacks, heart conditions requiring heart bypass of valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nervous disorders, injuries caused by serious accidents on or off the job, ongoing pregnancy, miscarriages, complications or illnesses related to

---

**6.** FMLA defines "health care provider" as:

(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or

(B) any other person determined by the Secretary to be capable of providing health care services.

29 U.S.C. § 2611(6).

pregnancy, such as severe morning sickness, the need for prenatal care, childbirth and recovery from childbirth.

H.R.Rep. No. 8, 103rd Cong., 1st Sess., pt. 1 at 29 (1993); U.S.Code Cong. & Admin. News 1993 at 3, 31; *see also* 58 Fed.Reg. 31,799 (1993). Although the legislative history states the above list is not exhaustive, it is clear from the examples provided that Congress intended "serious health condition" to mean serious illnesses and not minor health conditions. Congress intended minor health conditions to be covered by an employer's sick leave policy. H.R.Rep. No. 8, 103rd Cong., 1st Sess., pt. 1 at 28. Thus, Plaintiff's alleged condition of "shortness of breath and chest pains" is not found on the list and qualifies as a minor health condition and not a "serious health condition" covered by the FMLA. *See, e.g., Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1035–36 (M.D.Tenn.1995) (holding complainant's illness of gastroenteritis and upper respiratory infection as minor and not a "serious health condition" covered by the FMLA); *Seidle v. Provident Mut. Life Ins. Co.,* 871 F.Supp. 238, 242 (E.D.Pa.1994) (deeming ear infection

as not a "serious health condition" covered by the FMLA).

The Department of Labor, pursuant to Congressional authority under 29 U.S.C. § 2654, has prescribed substantive regulations which offer a more detailed explanation of what type of illnesses and under what conditions one may qualify as having a serious medical condition under the FMLA.[7]

█ From this regulation, the Department of Labor has developed a test for what illnesses qualify as serious health conditions. If an employee is (1) incapacitated[8] for more than three days, (2) seen once by a doctor, and (3) prescribed a course of medication, such an antibiotic, she has a "serious health condition" worthy of being covered by the FMLA. *Brannon,* 897 F.Supp. at 1036.

Plaintiff does not meet the definition of serious health condition as promulgated by the Department of Labor: there is no explanation of the cause of her eight day leave; there is no indication from what serious medical condition she was suffering; and there is no indication Plaintiff was actually incapaci-

---

7. One regulation, 29 C.F.R. § 825.114, states in part:

What is a "serious health condition" entitling an employee to FMLA leave?

(a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA means an illness, injury, impairment, or physical or mental condition that involves:

(1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility . . . ; or

(2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of

continuing treatment under the supervision of the health care provider.

. . . . .

(b) . . . Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

(c) . . . Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave.

8. The regulations define "incapacity" as, i.e., "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i).

tated. Plaintiff also never alleges that she was prescribed a course of medication to treat her condition. Because the Plaintiff fails to plead properly that her employment was covered under the FMLA or that she suffered from a "serious health condition" as defined by the Act, the Court dismisses the Plaintiff's fourth claim.

## F. Leave to Replead

 Plaintiff has requested permission to file an amended Complaint. Rule 15(a) of the Federal Rules of Civil Procedure states, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cohen v. Citibank, N.A.*, No. 95 Civ. 4826, 1997 WL 88378, at *2 (S.D.N.Y. Feb.28, 1997); *Intermetals Corp. v. M/V Arctic Confidence*, No. 92 Civ. 1856, 1993 WL 312903, at *1 (S.D.N.Y. Aug. 12, 1993). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave" should be given. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). "Although the grant or denial of leave to amend is within the discretion of the district court, a decision 'without any justifying reason' may be an 'abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d Cir.1983) (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. at 230)

 While the Court finds Plaintiff's Complaint is insufficient, "the Court cannot determine that the plaintiff could not, under any circumstances, sufficiently allege [her] claims." *Protter v. Nathan's Famous Sys., Inc.*, 904 F.Supp. 101, 111 (E.D.N.Y.1995). Therefore, Plaintiff is granted leave to file an Amended Complaint. With regard to any amendment, Plaintiff is cautioned against perfunctory, insubstantial or cosmetic changes. *Id.* The Court notes with approval

Judge Leisure's thoughtful comments in *Spier v. Erber*, No. 89 Civ. 1657, 1990 WL 71502, at *10 n. 8 (S.D.N.Y. May 24, 1990):

> [I]t has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion [to dismiss] after an adequate and thorough repleading can also be viewed as frivolous.

 While Judge Leisure's comments are specifically directed at repleading a fraud claim, failure to replead adequately any cause of action may subject a party to Rule 11 sanctions. *See, e.g., Corren v. New York Univ.*, No. 86 Civ. 7199, 1987 WL 28640, *2 n. 3 (S.D.N.Y. Dec.11, 1987) (party repleading claim under the Clean Air Act subject to Rule 11 sanctions). In the event that Plaintiff files an Amended Complaint that is insufficiently pled or not in accord with this Court's decision, the Court may, on motion, take appropriate action. *See also Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 1003 (E.D.N.Y.1995).

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted, with leave to amend on the first, second and fifth causes of action.

Should Plaintiff choose to amend she shall do so within twenty days of this Memorandum and Order. Should Plaintiff amend, Defendants are to move or answer within 20 days of service of the Amended Complaint.

SO ORDERED.